WORD OF FAITH WORLD OUTREACH CENTER CHURCH, INC., Appellant,

v.

**John G. OECHSNER, Jr., Appellee.**

**No. 05–82–01393–CV.**

Court of Appeals of Texas, Dallas.

March 7, 1984.

Rehearing Denied April 20, 1984.

---

1. No contention is made by appellant that the entire 864 acres falls within the church exemp-

tions.

John A. Stewart, Dallas, for appellant.

H. Louis Nichols, Saner, Jack, Sallinger & Nichols, Dallas, for appellee.

Before CARVER, ALLEN and SHUM-PERT, JJ.

ALLEN, Justice.

The appellant, Word of Faith World Outreach Center Church, Inc., (hereinafter referred to as the Church) appeals a judgment awarding to the appellee, John G. Oechsner, fee title to an abandoned street running between their properties. The Church complains that the trial court erred in (1) denying its motion to reopen the evidence and (2) in ruling that upon abandonment of the street in question, the fee title and possession of the entire street vested in Oechsner. We agree with the Church's contentions and therefore reverse and remand.

In May 1887, the Ogden Addition to the city of Farmers Branch was platted and filed for record by H.O. and J.T. Ogden. The Ogdens dedicated the streets within the subdivision for public use. Irondale Street (formerly Wood Street) was platted wholly within the boundaries of the Ogden Addition. The 40 foot wide street ran north and south along the western edge of the Ogden Addition, thereby constituting the western margin of the addition. Blocks 9 and 10, now owned by Oechsner as Ogden's successor in title, were originally platted as a part of the Ogden Addition with the western edge of Blocks 9 and 10 abutting the eastern boundary of that portion of Irondale Street which has been

abandoned by the city of Farmers Branch. The property abutting the western boundary of the abandoned portion of Irondale Street and opposite Blocks 9 and 10 is presently owned by the Church. The land owned by the Church is a part of the Ballard Addition to the city of Farmer's Branch and was never platted as a part of the Ogden Addition. In 1982, the city abandoned Irondale Street, and Oechsner brought a declaratory judgment action against the church to determine the ownership of Irondale Street. Oechsner also sought to enjoin the Church from using and occupying the west one-half of Irondale Street, claiming he owned fee title in the entire street. Trial was before the court without a jury. The case was submitted solely upon the appellee's exhibits 1 through 10 which were introduced in the record by stipulation between the parties on the basis that no fact issue was present in the case. After both parties rested and closed, the court requested that the parties present written briefs in support of their positions. Subsequently, the Church filed a motion for leave to reopen the case on the basis that Oechsner's trial brief had raised an issue of fact. The trial court denied the Church's motion, ruling that the Church's proffered evidence was irrelevant and immaterial to the issue before the court. Consequently, the Church filed a bill of exception detailing the exhibits and testimony it sought to present. The court entered judgment in favor of Oechsner, granting him fee title and possession in the entire width of Irondale Street. Further, the court permanently enjoined the Church from using and occupying the west one-half of Irondale Street.

The Church concedes that the judgment might be correct if based solely on the stipulated facts that were before the trial court. It is the Church's contention, however, that the evidence offered in support of its motion to reopen necessarily requires a *different conclusion.* The Church argues that the proffered evidence shows that Ogden owned the land that abutted Irondale Street to the west when the Ogden Addition was platted and filed for record. As

Ogden's successor in title to that land abutting Irondale Street to the west, the Church argues that under Texas law it takes to the center line of Irondale Street upon its abandonment. Accordingly, the Church claims that its proffered evidence was relevant, material, and decisive, and thus the trial court, in denying the Church's motion to reopen on the grounds that such evidence was immaterial and irrelevant, abused its discretion.

Oechsner argues that the trial court was correct in denying the Church's motion to reopen on the basis that the proffered evidence was irrelevant and immaterial. He argues that because Irondale Street was wholly within the Ogden Addition, and because he is Ogden's successor in title to blocks 9 and 10 within the Ogden Addition that abut Irondale Street, that upon the abandonment of the street the fee title in the entire width of the street vests in him. He further argues that a party who seeks to reopen the evidence must show due diligence in procuring the evidence, and that the trial court correctly denied the Church's motion because the Church wholly failed to show due diligence.

 This question is governed by TEX.R.CIV.P. 270 (Vernon 1976) which provides:

At any time the court may permit additional evidence to be offered where it clearly appears to be necessary to the due administration of justice. Provided in a jury case no evidence on a controversial matter shall be received after the verdict of the jury.

It is well established that in considering appeals based on rule 270 that the question of re-opening a case for the purpose of admitting additional evidence is within the sound discretion of the trial judge, and his action refusing to permit a party to reopen for such purpose should not be disturbed by an appellate court unless it clearly appears that such discretion has been abused. *Guerrero v. Standard Alloys Manufacturing Co.,* 598 S.W.2d 656 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.). How-

ever, such discretion should be liberally exercised in the interest of permitting both sides to fully develop the case in the interest of justice. *Barrier v. Beavers*, 531 S.W.2d 191, 193 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.); *Papco, Inc. v. Eaton*, 522 S.W.2d 538, 543 (Tex.Civ.App.—Texarkana 1975, no writ). In *Hill v. Melton*, 311 S.W.2d 496 (Tex.Civ.App.—Dallas 1958, writ dism'd.) the court stated:

Ordinarily it lies within the trial court's discretion to grant or refuse permission to a party to reopen a case for the reception of additional testimony. But there are occasions when it is the duty of the court to grant such a request, especially when the proffered testimony is decisive, its reception will not cause any undue delay, or do an injustice.

Oechsner cites several cases to support the proposition that the party seeking to reopen must show due diligence. In each of the cases, however, the court ultimately held that the trial court did not abuse its discretion in denying the movant's motion to reopen because the evidence was immaterial or merely cumulative. *See Guerrero v. Standard Alleys Manufacturing Co.*, 598 S.W.2d 656 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); *Smart v. Missouri-Kansas-Texas Railroad Co.*, 560 S.W.2d 216 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Highlands Underwriters Insurance Co. v. Martin*, 442 S.W.2d 770 (Tex.Civ.App.—Beaumont 1969, no writ); *Collins v. Hall*, 161 S.W.2d 311 (Tex.Civ.App.—Austin 1942, writ ref'd w.o.m.). While we recognize the line of Texas cases that require the moving party to show due diligence, we believe that such is merely one of several factors to be considered within the court's discretion in determining whether to grant a movant's motion to reopen a case. The *Hill* case lists three other factors to be considered by the court: (1) whether the proffered evidence is decisive, (2) whether the reception of such evidence will cause any undue delay, and (3) whether the court's refusal to reopen will do an injustice. In fact, the court in the *Hill* case states that there are occasions where if the three factors above are present, it may be

the court's "duty" to grant the motion to reopen. 311 S.W.2d at 500. Therefore, we must consider whether the Church's evidence in support of its motion to reopen was in fact material, relevant, and decisive, and if so, whether the trial court abused its discretion in denying the motion to reopen.

When a road or street is dedicated to the public, the governmental entity exercising jurisdiction over the street ordinarily acquires only an easement in the street. *Pittman v. City of Amarillo*, 598 S.W.2d 941, 944 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.); *Humble Oil and Refining Co. v. Blankenburg*, 149 Tex. 498, 235 S.W.2d 891, 893 (1951). Unless the dedication states otherwise, the abutting landowner owns the fee simple title to the center of the street subject to the public easement. *City of Fort Worth v. Southwest Magazine*, 358 S.W.2d 139, 141 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n.r.e.), *cert. denied*, 372 U.S. 914, 83 S.Ct. 730, 9 L.Ed.2d 722 (1963). The promoter of a subdivision therefore owns the fee in the highway only so long as he owns the lots abutting thereon. *Riley v. Davidson*, 196 S.W.2d 557, 560 (Tex.Civ.App.—Galveston 1946, writ ref'd n.r.e.). Once lots that abut the public highway or street are sold, the general rule in Texas is that such a conveyance carries with it the fee to the center of the road, unless the inference that it was so intended is rebutted by the express terms of the grant. *Cox v. Campbell*, 135 Tex. 428, 143 S.W.2d 361 (1940). While Oechsner concedes that this is the general rule in Texas, he argues that the facts of this case fall within an exception to the general rule as found in *Cantley v. Gulf Production Co.*, 135 Tex. 339, 143 S.W.2d 912 (1940). In *Cantley*, the supreme court stated, "where a highway is laid off entirely on the owner's land, running along the margin of his tract, and he afterwards conveys the land, the fee in the whole of the soil of the highway vests in his grantee." 143 S.W.2d at 915–16. Oechsner argues that Irondale Street was laid off entirely on Ogden's land and ran along the margin of Ogden's tract, and therefore, as Ogden's successor in title to blocks 9 and 10 of the Ogden Addition which abut Irondale Street,

he (Oechsner) owns the fee title to the entire width of Irondale Street upon its abandonment. *See also, Hartwell Ironworks v. Missouri-Kansas-Texas Railroad Co.*, 56 S.W.2d 922, 926 (Tex.Civ.App.—Galveston, no writ); *Roberts v. Shell Pipeline Corp.*, 175 S.W.2d 106, 107 (Tex.Civ.App.—Waco 1943, no writ).

The Church argues that the *Cantley* exception is inapplicable because Irondale Street was not laid off along the margin of Ogden's tract, rather it was bounded on both sides by land owned by Ogden. The Church relies on the rule that where the grantor owns land on both sides of the easement, his conveyance of a tract adjoining one side carries fee title to the center line. *Haines v. McLean*, 154 Tex. 272, 276 S.W.2d 777 (1955). There was no evidence within the stipulated facts that showed that Ogden owned the land on both sides of Irondale Street when it was dedicated for public use. The Church argues that the evidence it sought to offer in support of its motion to reopen showed that Ogden was indeed the owner of the land on both sides of Irondale Street upon its dedication, and therefore, the rule in *Haines* should apply, and the abutting landowners should take to the center line of Irondale Street. We need not detail all the evidence in support of the Church's motion to reopen which is before us by way of bill of exception. However, we note that in 1884, some three years before the Ogden Addition was platted and filed for record, Ogden acquired a 25 acre tract, which included the Ogden addition and also the land immediately west of Irondale Street now owned by the Church. The evidence shows that in November 1887, seven months after the Ogden Addition was platted and filed for record, Ogden conveyed to J.W. Asburry the land that abuts Irondale Street to the west and is now owned by the Church as a successor in title. Under the *Haines* rule, this conveyance included title to the center of the street. Thus the evidence appears to be both relevant and material to the issue then pending before the trial court. Not only was the evidence both material and relevant, but upon admission, if unrebutted by Oechsner, it could have produced a differ-

ent result than that reached by the trial court in its judgment. We hold that the evidence proffered by the church in support of its motion to reopen the case meets the test laid down by the *Hill* case, 311 S.W.2d at 500, so as to entitle the church to a reopening of this case. We find nothing in the record to show that any undue delay would have resulted from granting the motion to reopen. No judgment had been pronounced by the court at the time the church filed its motion. The evidence the church sought to introduce on a reopening was documentary in nature. The court's order overruling the church's motion to reopen reflects that the court had examined the proffered evidence and found it to be irrelevant and immaterial and gave this finding as the reason for denying the motion. We hold that this finding was erroneous. The denial of a motion based on an erroneous finding does an injustice to the movant. The motion to reopen this case should have been granted so as to permit the Church and Oechsner to present any admissible evidence pertaining to the issues to be decided by the court.

Therefore, we hold that the court abused its discretion in denying the appellant's motion to reopen the case and thus committed an error requiring a reversal.

We reverse and remand.