**The State of Texas for the Best Interest and PROTECTION OF H.W.**

**No. 12–01–00334–CV.**

Court of Appeals of Texas, Tyler.

July 31, 2002.

Forrest K. Phifer, Rusk, for appellant.

Craig D. Caldwell, Rusk, for appellee.

Panel consisted of GOHMERT, JR., C.J., WORTHEN, J., and GRIFFITH, J.

SAM GRIFFITH, Justice.

Appellant H.W. appeals from a judgment ordering his commitment for temporary inpatient mental health services pursuant to TEX. HEALTH & SAFETY CODE ANN. § 574.034 (Vernon Supp.2002). After a hearing, the trial court ordered H.W. committed to Rusk State Hospital for a period not to exceed ninety days.[1] In seven issues, H.W. challenges the legal and factual sufficiency of the evidence, raises various constitutional issues, and complains that he did not receive effective assistance of counsel. We affirm the judgment of the trial court.

#### BACKGROUND

On October 1, 2001, Peggy Baugh filed an Application for Court–Ordered Temporary Mental Health Services with the County Clerk of Cherokee County, Texas. The application stated that H.W. was mentally ill and that he met the criteria in section 574.034 of the Texas Mental Health Code for court-ordered temporary mental health services. On that same date, the trial court signed an order of protective custody; consequently H.W. was already a patient at Rusk State Hospital at the time of the hearing.

The hearing on the application was held on October 9 and October 16 of 2001. At the conclusion of the hearing, the trial court found that H.W. was mentally ill and that he met at least one of the three additional criteria for commitment listed in section 574.034(a)(2). See TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(A), (B), (C) (Vernon Supp.2002). The judgment does not specify which criterion formed the basis for the commitment, and findings of fact and conclusions of law were not requested or filed.

#### BURDEN OF PROOF AND STANDARD OF REVIEW

Section 574.034 of the Texas Health and Safety Code contains the criteria for court-ordered temporary inpatient mental health services. The court may order a proposed patient to receive temporary inpatient mental health services only if the factfinder concludes from clear and convincing evidence that the proposed patient is mentally ill and also meets at least one of the additional criteria set forth in section 574.034(a)(2). Specifically, subsection (a)(2) provides the factfinder must conclude that as a result of mental illness, the proposed patient:

(A) is likely to cause harm to himself;

(B) is likely to cause serious harm to others; or

(C) is:

 (i) suffering severe and abnormal mental, emotional, or physical distress;

 (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited

---

1. The ninety-day commitment period has expired, but this appeal is not moot. In *State v. Lodge*, 608 S.W.2d 910, 911 (Tex.1980), the Texas Supreme Court held that the doctrine of mootness does not apply to appeals from involuntary commitments.

by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

 (iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2) (Vernon Supp.2002).

█ The State has the burden of establishing by clear and convincing evidence that the proposed patient meets at least one of the additional criteria listed in section 574.034(a)(2). *Mezick v. State,* 920 S.W.2d 427, 430 (Tex.App.-Houston [1st Dist.] 1996, no writ). "Clear and convincing evidence" is an intermediate standard, falling between the preponderance of the evidence standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979) (per curiam). The Texas Supreme Court has defined "clear and convincing evidence" as "that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Addington,* 588 S.W.2d at 570. When court-ordered temporary mental health services are sought, an additional requirement for clear and convincing evidence is imposed. To be clear and convincing under subsection (a), the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm

 (1) the likelihood of serious harm to the proposed patient or others; or

 (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (Vernon Supp.2002). The clear and convincing standard does not alter the appropriate standard of review. *In re Caballero,* 53 S.W.3d 391, 395 (Tex. App.-Amarillo 2001, pet. denied).

### *Legal Sufficiency of the Evidence*

█ In reviewing a legal sufficiency or no evidence complaint, the appellate court must consider only the evidence and inferences tending to support the challenged findings and disregard all evidence and inferences to the contrary. If there is more than a scintilla of evidence to support the challenged findings, the no evidence challenge fails. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). In the context of the State's heightened burden of proof in a temporary commitment case, a no evidence challenge will be sustained if the evidence is insufficient to produce in the mind of the factfinder a firm belief or conviction as to the truth of the facts. *In re Breeden,* 4 S.W.3d 782, 785 (Tex.App.-San Antonio 1999, no pet.).

### The Evidence

█ At the commitment hearing, the State offered into evidence two physician's certificates of medical examination for mental illness. Both stated that H.W. was suffering from bipolar I disorder, manic, with psychosis. Both physicians also cited a situation where H.W. dropped a cigarette while he was in bed, which started a fire. Also introduced into evidence was a report by Tammy Jones, who was a member of H.W.'s treatment team at Rusk State Hospital. She stated that the patient's mother had contacted the fire marshal regarding H.W. for the offense of arson. The incident was investigated, and the fire marshal observed a fire-damaged treadmill and the burnt remains of a towel and an umbrella, all located in H.W.'s bedroom. H.W. purportedly told the fire marshal that he had been smoking marijuana

when he fell asleep and caused the fire. The fire marshal put in his report that H.W. "was very interested in the damage caused by the fire, and thought it was cool." H.W.'s mother informed the fire marshal that they had been having a lot of trouble with her son, that he was not taking his medication, and that he was not thinking clearly. Upon arriving at Rusk State Hospital, H.W. claimed that he was being persecuted by his mother for being a Roman Catholic and for praying out loud.

Both of H.W.'s treating physicians testified at the hearing. Dr. Siddiqui averred that, according to H.W., he went to sleep with a cigarette, and the mattress, and ultimately the room, caught on fire. According to the stepfather, H.W. had set fire to the house a couple of times before. Dr. Siddiqui offered this as reason for his belief that H.W. was likely to cause serious harm to himself and others. Dr. Siddiqui also testified that he believed H.W. had stopped taking his medication, based upon H.W.'s failure to go to the local MHMR center for six months. Additionally, Dr. Siddiqui told the trial court that H.W. had "grandiose" schemes for his future, as well as "grandiose" ideas about a large stock portfolio and his friendship with George W. Bush. He was delusional about his potential for earning a lot of money. Dr. Siddiqui also stated that H.W. had passed some bad checks in the past.

Dr. Thompson, another treating physician, testified that he agreed with Dr. Siddiqui's diagnosis of bipolar I, manic, with psychosis. The overt act upon which he based his evaluation that H.W. should be committed was the incident in which he started a fire. Dr. Thompson opined that the fire was a manifestation of H.W.'s mental illness. He also testified that he believed that H.W. was likely to cause serious harm to himself or to others if not treated for his mental illness.

We hold that, based upon the two doctors' testimony, and Jones's report, the evidence is legally sufficient to support the trial court's ruling that H.W. was mentally ill, and that he had engaged in an overt act which showed by clear and convincing evidence that he was a danger to himself or to others.

### Factual Sufficiency of the Evidence

 When conducting a factual sufficiency review, this court must consider all of the evidence, including any evidence contrary to the verdict. *Plas–Tex. Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We must reverse on the basis of a factual insufficiency or great weight and preponderance point if the court's finding is so against the great weight and preponderance as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). Findings of fact are the exclusive province of the factfinder. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex.1986). This court is not a fact finder and may not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if a different answer could be reached on the evidence. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).

### The Evidence

 This court will now consider all of the evidence, including any evidence contrary to the verdict. In addition to the evidence cited in the legal sufficiency analysis, there was also extensive testimony from H.W. himself. According to H.W., he was the only one taking care of his mother and stepfather, doing both the housework and the cooking. He testified that the reason he had bounced a few checks was because the person who gave him a check for damages due to an automobile accident

stopped payment on that check. H.W. also stated that he was a sane, competent and logical person, who did not shoot "over [his] realms," and was taking his medication daily. He had no intention of hurting himself or anyone else. H.W. averred that he had fallen asleep with a cigarette, and that it was simply an accident which caused the fire. When he woke up, he got a bucket of water and doused the fire. The fire was already out when the fire department arrived.

█ Perhaps we would have come to a different conclusion concerning the fire based purely upon the record. However, the trial judge listened to all of the testimony and watched the mannerisms, conduct and demeanor of each of the witnesses and apparently did not believe H.W. when he stated that he had not intentionally started the fire. We do not set aside the trial court's finding when it was based upon the credibility of a witness. *Herbert*, 754 S.W.2d at 144. Further, we cannot say that the court's finding was so against the great weight and preponderance as to be manifestly unjust. Accordingly, we hold that there is both legally and factually sufficient evidence to find that H.W. is mentally ill and that he is likely to cause harm to himself or others based upon the overt act of causing a fire in his parents' home. Accordingly, we overrule issue six.

### CONSTITUTIONAL ISSUES

In his first and second issues, H.W. contends that section 574.034 violates his right to due process of law as guaranteed by article I, section 19 of the Texas Constitution and by the Fourteenth Amendment to the United States Constitution.[2] Specifically, H.W. contends that section 574.034 refers to a patient's "ability to function

2. In his argument, H.W. refers to " § 574.034, et seq." However, his argument

independently," but does not define "ability." He further contends that the statute does not contain a means for determining when a proposed patient is "unable" to make a rational and informed treatment decision. In his third and fourth issues, H.W. argues that for the reasons articulated in his first and second issues, section 574.034 violates his right to equal protection guaranteed by article I, sections 3 and 3a of the Texas Constitution and by the Fourteenth Amendment to the United States Constitution.

█ In reviewing the record, we note that H.W. did not make his due process and equal protection arguments in the trial court. As a rule, a constitutional claim must have been asserted in the trial court to be raised on appeal. *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993). That rule applies here, and therefore H.W. has not preserved those claims for our review. Accordingly, we overrule H.W.'s first, second, third, and fourth issues.

### INEFFECTIVE ASSISTANCE OF COUNSEL

█ In his fifth issue, H.W. argues that his trial counsel's failure to challenge the constitutionality of section 574.034 and the resulting waiver of the arguments presented in his first four issues constitutes ineffective assistance of counsel. "[T]he subject of an involuntary civil commitment proceeding has the right to effective assistance of counsel at all significant stages of the commitment process." *Ex parte Ullmann*, 616 S.W.2d 278, 283 (Tex.Civ.App.-San Antonio 1981, writ dism'd). However, we have found no published Texas case that expressly declares the appropriate standard for determining whether assistance of counsel was ineffective in an involuntary civil commitment proceeding.

pertains to the language of section 574.034 only.

Therefore, we look to the general standards established for effective assistance of counsel in criminal cases and determine that, to prevail on his fifth issue, H.W. must meet the two-pronged test articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To show that his trial counsel was ineffective, H.W. must demonstrate that counsel's performance was deficient. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. In order to satisfy that prong, H.W. must demonstrate that counsel's performance fell below an objective standard of reasonableness, as judged on the facts of his particular case and viewed at the time of counsel's conduct. *Id.* at 688–90, 104 S.Ct. at 2064–66. Further, counsel is presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996). Second, H.W. must show that counsel's performance prejudiced his defense at trial. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. "It is not enough for the Appellant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. at 2067. Rather, he must show there is a reasonable probability that the result of the proceeding would have been different but for the errors made by counsel. *Id.* at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland,* 928 S.W.2d at 500. Failure to

make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.*

■ H.W. has a difficult burden in proving ineffective assistance of counsel. As the court of criminal appeals explained in *Thompson v. State,* 9 S.W.3d 808 (Tex. Crim.App.1999),

[a] substantial risk of failure accompanies an appellant's claim of ineffective assistance on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel.

*Id.* at 813–14 (citations omitted). Thus, to successfully demonstrate counsel's ineffectiveness, an appellant must generally present evidence, usually through a motion for new trial [3] or a habeas corpus proceeding, illustrating trial counsel's strategy. *Id.;* *Kemp v. State,* 892 S.W.2d 112, 115 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd).

■ In the case at hand, we have no evidence from counsel's perspective concerning whether he considered challenging the constitutionality of section 574.034 and, if so, the reasons he decided not to do so. Generally, when the record contains no evidence of the reasoning behind counsel's conduct, we cannot conclude counsel's performance was deficient. *See Jackson,* 877 S.W.2d at 771. If there is any plausible basis for trial counsel's ac-

---

**3.** The timetable the legislature created for appeals from orders requiring mental health services does not contemplate the filing of a motion for new trial. *Johnstone v. State,* 22 S.W.3d 408, 410 (Tex.2000). However, a person who is receiving in-patient mental health services, whether voluntarily or court-ordered, may seek a writ of habeas corpus. Tex. Health & Safety Code Ann. § 572.003(a) (Vernon Supp.2002); Tex. Health & Safety Code Ann. § 576.003 (Vernon 1992).

tions, we are not required to speculate on the reasons for counsel's actions when confronted with a silent record. *Id.; McCoy v. State*, 996 S.W.2d 896, 900 (Tex.App.-Houston [14th Dist.] 1999, no pet.). However, if a silent record demonstrates that no reasonable trial attorney could have made the challenged trial decisions, to hold counsel ineffective is not speculation. *See Vasquez v. State*, 830 S.W.2d 948, 950–51 (Tex.Crim.App.1992); *McCoy*, 996 S.W.2d at 900.

Because the record contains no evidence relating to counsel's consideration of the constitutional issues H.W. seeks to assert on appeal, we are unable to determine that the failure to raise the issues in the trial court constitutes ineffective assistance of counsel. Although H.W. contends that the mere failure to raise those issues is sufficiently egregious to satisfy the first prong of *Strickland*, he has cited no authority that supports his contention and we are not aware of any. *Cf. Vaughn v. State*, 931 S.W.2d 564, 566 (Tex.Crim.App.1996) (claim of ineffective assistance of counsel for failure to object requires showing that if trial counsel had objected, the trial judge would have committed error in refusing to sustain the objection). Therefore, H.W. has failed to show that his counsel's performance fell below the objective standard of reasonableness.

Even if we agreed that trial counsel's performance was deficient, however, H.W. has failed to make any showing that he was prejudiced as a result. H.W. argues that "[h]ad trial counsel objected to the constitutionality of the referenced statutes, and presented arguments in support thereof, the trial court would have had the opportunity to rule on same and the subsequent judgment on appeal herein may never had [sic] occurred." However, he presents no argument and cites no authority from which we can determine that coun-

sel's constitutional challenge, if raised, would have been sustained by the trial court. *Cf. id.* As a result, H.W. has failed to show that there is a reasonable probability that the result of the proceeding would have been different but for the alleged error made by counsel. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Accordingly, we overrule H.W.'s fifth issue.

### REOPENING CASE FOR ADDITIONAL EVIDENCE

 In his seventh issue, H.W. alleges that the trial court erred in twice permitting the State to reopen its case to offer additional testimony and evidence. At the conclusion of the initial hearing, the trial court continued the hearing until the following week so that Dr. Thompson could testify. After the parties closed at the second hearing, the trial court allowed the State to introduce Tammy Jones's report into evidence. The issue before us is governed by Rule 270 of the Texas Rules of Civil Procedure, which provides as follows:

> When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time; provided that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury.

Citing *Word of Faith Outreach Ctr. Church, Inc. v. Oechsner*, 669 S.W.2d 364, 367 (Tex.App.-Dallas 1984, no writ), H.W. argues that there must be a showing of due diligence on the part of the movant in making the request to reopen the case, that the additional evidence is decisive, that the reception of additional evidence will not cause undue delay, and that the reception of additional evidence will not cause an injustice. H.W. further asserts that the State in this case failed to satisfy its burden to demonstrate the required factors, thus rendering the reopening of the case error.

We agree that the above factors should be considered by the trial court in making the determination of whether to reopen a case. However, they are just that—factors to be considered. *Ex parte Stiles*, 950 S.W.2d 444, 446–47 (Tex.App.-Waco 1997, no writ). But if all of the factors are not satisfied, we look at the trial court's decision from a different vantage point. The trial court's action in ruling upon a motion to reopen the evidence should not be disturbed on appeal unless it clearly appears that the court has abused its discretion. *Word of Faith Outreach Ctr. Church, Inc.*, 669 S.W.2d at 367. The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Instead, it is a question of whether the trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). In other words, we must determine whether the court's rulings were arbitrary or unreasonable. *Id.* at 242. The fact that a trial judge may decide a matter within his or her discretion in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.* Nor does a mere error of judgment amount to an abuse of discretion. *Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex.1989). And the trial judge should liberally exercise his discretion to permit both sides to fully develop their case. *Lifestyle Mobile Homes v. Ricks*, 653 S.W.2d 602, 604 (Tex. App.-Beaumont 1983, writ ref'd n.r.e.).

We agree that the State did not show that it had used due diligence in offering Dr. Thompson's testimony and Tammy Jones's report. However, the remaining three factors do seem to be satisfied, in that the additional evidence was decisive, the reception of additional evidence did not cause undue delay, nor did it cause an injustice. The additional evidence was decisive, in that Dr. Thompson testified, in much stronger terms than Dr. Siddiqui, that the fire was an overt act caused by H.W.'s mental illness. Reopening the case did not cause undue delay in that the trial court heard Dr. Thompson's testimony just one week after the initial hearing. And Tammy Jones's report was received into evidence just seconds after the parties closed at the second hearing. Further, reopening the case did not cause an injustice because it gave H.W. the opportunity to testify that the fire was not intentional, which he had failed to do at the first hearing. We hold, therefore, that the trial court did not abuse its discretion when it reopened the case for further evidence.

Even assuming that it was an abuse of discretion, any error is harmless inasmuch as the testimony elicited during the State's primary case was sufficient to establish that H.W. was mentally ill and that either he was a threat to himself or others. Accordingly, we overrule issue seven.

### CONCLUSION

Based upon our review of the record, we hold that the evidence is legally and factually sufficient to support the trial court's finding that H.W. is mentally ill and that as a result of his mental illness, he is likely to cause serious harm to himself or others. We further hold that H.W. has not shown that his counsel was ineffective during his temporary commitment hearing, nor that reopening the case for additional evidence is reversible error. The judgment of the trial court is *affirmed.*