

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00034-CV

_____


IN RE:   THE ESTATE OF OLA MAE JOHNSON, DECEASED


On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 2010-16231-CCL


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Ola Mae Johnson, mother of eight children, died intestate on January 27, 2006. Her oldest daughter, Vernia Calhoun, was appointed administrator of Johnson's estate. Calhoun filed a petition for declaratory relief seeking to set aside a deed to Johnson's residence executed on December 31, 2004, in favor of Johnson's son, Lynn D. Johnson, on the belief that capacity to execute the deed was lacking. A jury trial resulted in a finding that Johnson had capacity to execute the deed. The estate appeals the trial court's judgment in favor of Lynn on grounds that the trial court erred in: (1) denying a directed verdict for the estate; (2) allowing Lynn to reopen the evidence; and (3) preventing Calhoun's testimony regarding handwriting analysis. We affirm the trial court's judgment.

## I. Trial Court Properly Denied Directed Verdict

### A. Standard of Review

Calhoun's complaint of the denial of her motion for directed verdict is the same as a challenge to the legal sufficiency of the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). The question of mental capacity is whether Johnson appreciated the effect of what she was doing and understood the nature and consequences of her acts and the business she was transacting. *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 845 (Tex. 1969). The test has also been stated that the person executing the deed must have sufficient mind and memory at the time of execution (here December 31, 2004), to understand the nature and effect of the act. *Decker v.*

*Decker*, 192 S.W.3d 648, 652 (Tex. App.—Fort Worth 2006, no pet.); *Bradshaw v. Naumann*, 528 S.W.2d 869, 875 (Tex. Civ. App.—Austin 1975, writ dism'd) ("The proper inquiry is the condition of the grantor's mind on the day the deed was executed and not whether she was . . . of unsound mind at another time prior to or after the making of the deed.").

The law generally presumes that a person possesses the requisite mental capacity at the time of executing a deed; thus, a party contesting such capacity bears the burden of proof. *Decker*, 192 S.W.3d at 652 (citing *Jackson v. Henninger*, 482 S.W.2d 323, 324-25 (Tex. Civ. App.—Austin 1972, no writ)). Because Calhoun challenges the denial of a motion for directed verdict (legal sufficiency) of an issue on which she bears the burden of proof, she must demonstrate that the evidence conclusively established all vital facts to support the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *Ray v. Farris*, 903 S.W.2d 806, 808 (Tex. App.—Texarkana 1995, no pet.). In other words, Calhoun must show that the evidence conclusively demonstrated that Johnson did not have the capacity to execute the deed. The question of capacity is generally one for the jury. *In re Estate of Robinson*, 140 S.W.3d 782, 793–94 (Tex. App.—Corpus Christi 2004, pet. denied). We review all of the evidence and inferences in the light most favorable to the jury's finding that Johnson possessed the requisite capacity at the time of execution. *Wilson*, 168 S.W.3d at 807.

**B.  Evidence Did Not Conclusively Establish Lack of Capacity**

There is no dispute in this case that Johnson was diagnosed with dementia and Alzheimer's prior to her death. The question for the jury involved whether the progression of her disease prevented her from having the requisite capacity to execute the deed to Lynn on December 31, 2004. Johnson's medical records, which the jury reviewed, shed some light on this issue.

Johnson was treated by Dr. Orin Littlejohn. In January 2003, Littlejohn believed that Johnson "definitely has sx of dementia probably Alzheimer's." However, he noted that Johnson was "oriented, she knows address, knows who the president is, and knows that this is Jan." In August 2004, Littlejohn wrote, "The patient's memory is even worse than previously [sic] . . . I feel that she has [sic] probably not taking the medication now and she does not remember she is taking it or not." A subsequent visit that month led Littlejohn to conclude, "I feel that she may be well on Namenda and Reminyl" medications. The last entry prior to the execution of the deed was on September 23, 2004. On that date, Littlejohn's notes reflect: "The family states that she does seem cleared, not as forgetful and does not repeat herself as much." He decided to continue Johnson on her medication. After the deed was executed, a January 20, 2005, note reflected the fact that Johnson had missed several appointments and that an examination revealed "definite changes of Alzheimer's." The following March 4, 2005, note stated:

> patient has responded rather dramatically with Reminyl & Namenda, however some of the family may feel that she needs to be in a nursing home but these are out of town sibling [sic], The children who live here and see her daily feel that she is able to take care of her personal needs without difficulty. . . . At the present time I do not feel that she needs to be in a nursing home or have closer supervision than she has now.

4

In June 2005, Littlejohn decided:

> She has improved as far as her mental status is concerned and she would like to be allowed to take over the control of her SS check. She also has a retirement check and she has been given control of that money and this may satisfy her complaints of not having any money. This will afford her a little freedom.

At the same time Johnson began exhibiting signs of dementia or memory loss in January 2003, her daughter Devonia Johnson moved in with her. Devonia would take Johnson to the bank and to the grocery store. Although Johnson paid her bills and shopped for groceries, Devonia testified she would "guide her through" the process of check writing. Devonia believed that by 2004, her mother was unable to handle her affairs.

Calhoun claimed that in 2005, her mother told the family during a meeting that she "wanted her house for her children and her grandchildren." Calhoun testified that she took over her mother's financial affairs in 2004 because her mother was unable to pay her bills, and further averred Johnson was not capable of executing a legal document in December 2004. However, Calhoun also testified that she was not aware that Johnson had dementia until March 2005, well after the deed had been executed. She stated, "I saw signs, but I didn't know." Calhoun further testified that she was present when her mother signed a contract to purchase furniture in 2005 and that she was unaware that her mother lacked capacity to enter into such a contract.

Lynn testified that he had given the house to his mother and she was to make payments. Later Johnson's brother, Joe, helped her with the payments. In 2005, he became aware that

Johnson was diagnosed with Alzheimer's and dementia, and he made the decision to live with her at that point. He testified that although his mother executed the deed to him in 2004, it was not delivered to him until several months after he was granted Johnson's power of attorney in April 2005. The deed was acknowledged before a notary public.

While it is undisputed that Johnson experienced dementia and Alzheimer's, Littlejohn's notes showed improvement of her symptoms with medication. Although the evidence was contradictory, when viewed in a light most favorable to the verdict, it established that Johnson knew her address, was capable of paying her bills, shopping for groceries, transacting business at the bank, and entering into contracts for the purchase of furniture. Therefore, we find that the trial court properly denied Calhoun's motion for directed verdict on the issue of capacity, for which she had the burden of proof.

We overrule Calhoun's first point of error.

## II. Trial Court Did Not Abuse Its Discretion to Reopen Evidence

Rule 270 of the Texas Rules of Civil Procedure provides that a trial court may permit additional evidence to be offered at any time when it clearly appears necessary to the administration of justice. TEX. R. CIV. P. 270. Rule 270 allows, but does not require, the court to permit additional evidence. *Lopez v. Lopez*, 55 S.W.3d 194, 201 (Tex. App.—Corpus Christi 2001, no pet.). The decision of whether a party should be allowed to reopen testimony lies within the discretion of the trial court. *Word of Faith World Outreach Ctr. Church*, *Inc. v. Oechsner*,

6

669 S.W.2d 364, 366 (Tex. App.—Dallas 1984, no writ). The trial court should liberally exercise its discretion in the interest of permitting both sides to fully develop the case in the interest of justice. We review a trial court's decision to reopen the evidence under the abuse of discretion standard. *See Forrest v. Hanson*, 424 S.W.2d 899, 907 (Tex. 1968); *Estrello v. Elboar*, 965 S.W.2d 754, 759 (Tex. App.—Fort Worth 1998, no pet.). A trial court abuses its discretion if it acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators*, *Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

Calhoun argues that the trial court erred in allowing Lynn to question her about the details of a furniture contract Johnson entered into in 2005. Specifically, Calhoun claims that the trial court should not have permitted Lynn to reopen the evidence because the furniture contract "was sitting on the table in Appellee's file throughout the entire trial" and "Appellee clearly was not diligent in presenting this evidence to the jury."

While it is true that diligence in obtaining evidence is a factor which the trial court may consider in determining whether to reopen the evidence, the trial court also considers whether: (1) the evidence is decisive; (2) reception of such evidence will cause undue delay; and (3) granting the motion will cause an injustice. *Hernandez v. Lautensack*, 201 S.W.3d 771, 778–79 (Tex. App.—Fort Worth 2006, pet. denied).

Lynn represented himself at trial. The trial court may have concluded that evidence of a contract entered into by Johnson after the execution of the deed, coupled with Calhoun's testimony

7

that she was unaware her mother could not enter into such a contract in 2005, was highly relevant. The court was free to decide that the evidence was not repetitive, would not cause undue delay, and that granting the motion to reopen would not cause injustice. The court could have also noted caselaw directing courts to exercise discretion liberally in the interest of permitting both sides to fully develop the case. *See Oechsner*, 669 S.W.2d at 366-67. With these considerations in mind, we cannot say that the trial court abused its discretion in reopening the evidence.

Calhoun's second point of error is overruled.[1]

### III. Calhoun Failed to Preserve Error Regarding Opinion as to Signature Comparison

Calhoun complains that the trial court "erred in not allowing [her] to question witness on comparing the signature on the deed with a document the parties agreed was a document signed by Ola Mae Johnson." When asked to compare the signatures on the furniture contract to the deed, the following transpired:

> Q. [By Mr. Bernoudy] And I know you're not a handwriting expert, but can you look at these two signatures and are they the same?
>
> A. [By Calhoun] It doesn't look like it.
>
> MR. LYNN JOHNSON: I want to object here, Your Honor. I want to object. Because there are other documents that Mother signed, like power of attorneys where her signature varied. And to zero in on those two documents and made [sic] a determination, I feel would be biased towards me.

---

[1] Within this same point of error, Calhoun argued multifariously that the furniture contract was impermissible hearsay because the business record exception had not been established and did not meet the "Code of Evidence." We overrule Calhoun's argument as moot; the furniture contract was not introduced or admitted into evidence. Rather, Lynn asked Calhoun questions about the transaction without objection.

THE COURT: I'm going to sustain that objection.

MR. BERNOUDY: Nothing further, Your Honor.

Although the trial court sustained an objection after the witness answered the question, Calhoun's answer to the question was not struck, and it was before the jury.[2]

We are unclear about Calhoun's complaint. Presumably, Calhoun complains of exclusion of some evidence. To adequately and effectively preserve error, a party complaining that evidence was improperly excluded must make an offer of proof that shows the nature of the evidence specifically enough so that the reviewing court can determine its admissibility unless the context of the question made apparent the substance of excluded testimony. *See* TEX. R. APP. P. 33.1; TEX. R. EVID. 103(a)(2). Calhoun does not claim that she intended to demonstrate that the signature on the deed was not her mother's. There was no dispute that the signature on the notarized deed belonged to Johnson. Instead, the only issue at trial was whether Johnson had the mental capacity to sign the deed. Further, as we have stated, Calhoun did testify that the two signatures did not look alike. The last point of error is overruled.

---

[2]Calhoun complains that the Texas Rules of Evidence would allow her to authenticate her mother's handwriting. Authentication is not the issue in this case as the deed had already been admitted into evidence.

## IV.  CONCLUSION

We affirm the trial court's judgment.


Jack Carter
Justice

Date Submitted:     August 4, 2011
Date Decided:       August 11, 2011