

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00491-CV

Bruce **BRAZELL**,
Appellant

v.

Martina **BRAZELL**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-16339
Honorable Laura Salinas, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:         Karen Angelini, Justice
                 Sandee Bryan Marion, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed:   May 7, 2014

AFFIRMED

Bruce Brazell appeals the trial court's judgment in a suit to recover a portion of his Civil Service retirement benefits awarded to his former spouse, Martina Brazell. In two issues on appeal, Bruce asserts (1) the trial court erred by reopening the evidence, and (2) the evidence is legally insufficient. We affirm.

## BACKGROUND

Bruce and Martina Brazell divorced on December 20, 2001, after eighteen years of marriage. The divorce decree awarded Martina a "forty-two percent interest, as of the date of this

divorce, in [Bruce's] Civil Service Retirement Plan, less the total sum of seventeen thousand five hundred dollars ($17,500), said sum to be deducted initially from [Martina's] pay as if and when [Bruce] receives his retirement pension." Bruce retired in July 2010 and began receiving his monthly annuity payments at that time. Bruce failed to make payments to Martina, and Martina brought suit in order to compel payment for past due and future payments owed to her.

The trial court held a hearing where both parties presented evidence and argument. Several days later, the trial court recalled the parties and requested additional evidence be submitted. After the additional evidence had been received and taking into account the $17,500 offset, the trial court ruled Martina was entitled to a $1,631.28 monthly annuity payment and was owed $37,963.52 in past due payments representing $1,631.28 per month starting from the date of Bruce's retirement until the date of judgment.

## REOPENING THE EVIDENCE

In his first issue, Bruce asserts the trial court erred when it reopened the evidence on its own motion. Bruce characterizes the trial court's decision to reopen the evidence as engaging in independent fact-finding, and argues the trial court "sought information to assist [Martina's] case-in-chief when the evidence introduced at trial clearly established the value of [Martina's] interest in [Bruce's] retirement as of the date of divorce."

The contested issues at the hearing were whether Bruce's retirement plan was a defined benefit plan or a defined contribution plan and the value of Bruce's benefits at the time of the divorce. Martina argued Bruce's retirement plan should be classified as a defined benefit plan because Bruce receives a monthly annuity payment that began upon his retirement. Therefore, Martina asserts she is entitled to her share of Bruce's monthly annuity payment. Bruce argued his retirement plan should be classified as a defined contribution plan because, at the time of the

divorce, he would only have been eligible to receive a refund of the contributions made. Therefore, Bruce asserts Martina is entitled only to a one-time payment that represents her share of the refund.

Retirement plans are commonly classified as either a defined contribution plan or a defined benefit plan. *See Reiss v. Reiss*, 118 S.W.3d 439, 440 n.1 (Tex. 2003) (citing *Shanks v. Treadway*, 110 S.W.3d 444, 445 (Tex. 2003)). In a defined contribution plan, the employee has a separate account similar to that of a savings account into which the employee and employer make contributions. *Smith v. Smith*, 22 S.W.3d 140, 148 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The value of a defined contribution plan is readily ascertainable at any time simply by looking at the account balance. *Baw v. Baw*, 949 S.W.2d 764, 768 (Tex. App.—Dallas 1997, no pet.).

In contrast, a defined benefit plan promises the employee a monthly benefit beginning at retirement. *Smith*, 22 S.W.3d at 148. If a plan is a defined benefit plan, apportionment of the benefit is based on the number of years of service the employee has at the time of retirement, along with other factors such as age and salary history. *Id*. Apportioning defined benefit plans upon divorce is difficult because their value at any given time is difficult to ascertain. *Id*. An employee spouse's accrued benefits in a defined benefit plan that have been earned during marriage, but have not vested and matured at the time of divorce, are a contingent property interest and a community asset subject to division upon divorce. *Boyd v. Boyd*, 67 S.W.3d 398, 407 (Tex. App.—Fort Worth 2002, no pet.).

In this case, the divorce decree awarded Martina "[a] forty-two percent interest, as of the date of this divorce, in [Bruce's] Civil Service Retirement Plan, less the total sum of seventeen thousand five hundred dollars ($17,500), said sum to be deducted initially from [Martina's] pay as if and when [Bruce] receives his retirement pension. Should the plan allow, it is ORDERED that [Martina] has the ability to seek to apply the debit of $17,500 in a pro-rated fashion from each of

her normal monthly payment[s] as an alternate payee of [Bruce's] retirement plan." At the hearing on Martina's Petition to Recover Future Property Awarded by Divorce Decree, Bruce introduced a letter dated January 7, 2013, from the United States Office of Personnel Management ("OPM"). OPM's letter stated it was responding to an inquiry from Bruce; however, the record does not include Bruce's initial inquiry to OPM. OPM's letter also stated that in order for Bruce to be eligible for the benefits under his retirement plan, he would have to reach a minimum age of fifty-five with thirty years of service, a minimum age of sixty with twenty years of service, or a minimum age of sixty-two with five years of service. As of the date of the divorce, Bruce had not yet reached the age of fifty-five. Therefore, OPM concluded Bruce would not have met the eligibility requirements, which was a prerequisite to receive benefits under his retirement plan. Instead, OPM stated Bruce would only have been able to make an application for a refund of the contributions made toward the retirement plan. As of the date of the divorce, the balance of the contributions made was $89,594.61. OPM then calculated Martina's interest by dividing Bruce's length of service during the marriage (219 months) by his total length of service (376 months) multiplied by Martina's forty-two percent interest awarded in the divorce decree, equaling a 24.46% interest. OPM then multiplied Martina's 24.46% interest by $89,594.61, calculating Martina's share of the contributions as of the date of the divorce at $21,914.84.

At the hearing, the parties offered different interpretations of OPM's letter and the dispute centered on whether Martina was entitled to a portion of Bruce's monthly annuity payment or simply a one-time payment of $21,914.84. Based on the information provided by OPM and working under the assumption that his retirement plan should be classified as a defined contribution plan, Bruce argued Martina was only entitled to a one-time payment of $21,914.84.

Relying on *Berry v. Berry*,[1] Martina asserted she was entitled to a yearly payment of $21,914.84, payable as a monthly annuity payment of $1,826.24. However, Martina's calculations erroneously presumed $89,594.61 represented the annual value of the monthly annuity payments Bruce would have received had he been eligible to retire as of the date of the divorce. The trial court did not make a ruling at the conclusion of the hearing and informed the parties it would review case law and contact them once a decision was made.

Several days later, the trial court recalled the parties and requested the parties contact OPM to calculate what Bruce's monthly annuity payment would have been as of the date of the divorce, assuming Bruce was eligible to receive his retirement benefits at that time. The trial court acknowledged Bruce was not eligible to receive his monthly annuity payment as of the date of the divorce. However, based on the trial court's interpretation of *Berry*, OPM's original calculation of Martina's interest, $21,914.84, was based on Bruce's total contributions rather than the value of his benefits at the time of the divorce. Bruce's attorney sent OPM another inquiry asking:

> What would Bruce's retirement benefits actually be, as of December 20, 2001? Would it be: A) $89,594.61 (being the contributions made into the plan by Bruce as to that particular date in time), or B) A percentage, or a prorated share of the present monthly benefits Bruce receives as a retiree from the Civil Service Retirement System.

OPM responded by sending a second letter dated March 25, 2013, stating, had Bruce been eligible to receive his retirement benefits as of the date of the divorce, his monthly annuity payment would have been $3,884 per month. Based on the new calculation from OPM, the trial court awarded Martina a $1,631.28 monthly annuity payment, calculated by multiplying Martina's forty-two percent interest awarded in the divorce decree by the $3,884 monthly annuity payment. The

---

[1] *Berry v. Berry*, 647 S.W.2d 945 (Tex. 1983).

trial court also awarded Martina $37,963.52 in past due payments after accounting for the $17,500 offset.

On appeal, Bruce argues the trial court erred in admitting additional evidence. Martina contends the trial court was authorized to admit additional evidence at any time because the evidence was necessary to the due administration of justice under Texas Rule of Civil Procedure 270.

"When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time . . . ." TEX. R. CIV. P. 270. The decision to reopen the evidence is within the sound discretion of the trial court and will not be overturned unless an abuse of discretion is shown. *Univ. Health Svcs., Inc. v. Thompson*, 24 S.W.3d 570, 580 (Tex. App.—Austin 2000, no pet.). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). In determining whether to permit additional evidence, a court should consider whether (1) the moving party showed due diligence in obtaining evidence; (2) the proffered evidence is decisive; (3) reception of such evidence will cause undue delay; and (4) granting the motion will cause injustice. *Poag v. Flories*, 317 S.W.3d 820, 828 (Tex. App.—Fort Worth 2010, pet. denied); *Word of Faith World Outreach Ctr. Church, Inc. v. Oechsner*, 669 S.W.2d 364, 367 (Tex. App.—Dallas 1984, no writ).

Bruce contends the trial court abused its discretion because Martina failed to exercise due diligence in obtaining the evidence contained in OPM's March 25, 2013, letter, and reception of the evidence caused undue delay. We agree the record is devoid of any evidence that Martina exercised due diligence in obtaining the additional evidence. However, the lack of due diligence by a party is but one factor we consider in determining whether the trial court abused its discretion. *See Ex parte Stiles*, 950 S.W.2d 444, 446–47 (Tex. App.—Waco 1997, no pet.); *Word of Faith*

*World Outreach Ctr. Church, Inc.*, 669 S.W.2d at 367. Some courts have even stated a trial court may have a "duty" to reopen the evidence, even when due diligence is lacking. *See Word of Faith World Outreach Ctr. Church, Inc.*, 669 S.W.2d at 367 (citing *Hill v. Melton*, 311 S.W.2d 496, 500 (Tex. Civ. App.—Dallas 1958, writ dism'd)).

Here, we conclude the remaining three factors are satisfied because the additional evidence was decisive, did not cause undue delay, and did not cause injustice. By requesting OPM calculate the value of Bruce's annuity payment assuming he would have been eligible to retire as of the date of the divorce, the trial court agreed with Martina's assertion that Bruce's retirement plan should be classified as a defined benefit plan rather than a defined contribution plan. The additional evidence was decisive and did not cause injustice because without it, the trial court could not have correctly calculated Martina's interest in Bruce's monthly annuity payment. Had the trial court based its calculation on OPM's January 7, 2013, letter rather than the March 25, 2013, letter, the trial court's calculations would have been erroneously based on the contribution amount rather than the value of the benefits as of the date of the divorce. Thus, reopening the evidence did not cause injustice because it was clearly apparent that the additional evidence was necessary to the due administration of justice. Given that the additional evidence was decisive and without it, the trial court's judgment would have resulted in an erroneous calculation, the trial court's three month and twenty day continuance did not cause undue delay. Accordingly, we conclude the trial court did not abuse its discretion by reopening the evidence.

## SUFFICIENCY OF THE EVIDENCE

In his second issue, Bruce asserts the evidence is legally insufficient to support the trial court's judgment.

### 1. Standard of Review

We review challenges to the sufficiency of the evidence in a bench trial under the same standard used in reviewing the sufficiency of the evidence in a jury trial. *Rosas v. Comm'n for Lawyers Discipline*, 335 S.W.3d 311, 316 (Tex. App.—San Antonio 2010, no pet.). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is not legally sufficient in the following situations: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; (4) the evidence establishes conclusively the opposite of the vital fact. *Id*. at 810. The trier of fact is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. *Id*. at 819; *Rosas*, 335 S.W.3d at 316.

### 2. Analysis

The evidence before the trial court included a copy of Bruce and Martina's divorce decree. The divorce decree awarded Martina a forty-two percent interest in Bruce's retirement plan. The divorce decree also accounted for a $17,500 debt that Bruce was allowed to offset against Martina's pay *as if and when Bruce received his retirement pension* and provided that Martina had the option to apply the $17,500 offset in a pro-rated fashion from *each of her normal monthly payments* as an alternate payee of Bruce's retirement plan. Thus, the divorce decree encompassed the possibility that Bruce would receive a monthly annuity payment and provided that Martina would be entitled to a percentage of such. *See Shanks*, 110 S.W.3d at 449 n.7 (construing "if, as, and when" language as non-vested contingent interest in benefits subject to equitable division upon divorce); *see also Berry*, 647 S.W.2d at 945–46 (determining former spouse entitled to contingent benefits upon retirement valued at time of divorce).

Additionally, the trial court also had two letters from OPM describing Bruce's retirement plan. OPM's January 7, 2013, letter set forth the Civil Service's eligibility requirements to retire and receive a monthly annuity payment based on a combination of age and years of service. OPM's March 25, 2013, letter provided the value of Bruce's monthly annuity payment assuming he was eligible to retire at the time of the divorce.

Finally, the trial court heard the testimony of Bruce and Martina. Both Bruce and Martina testified they lacked personal knowledge about whether the plan administrator, OPM, classified Bruce's retirement plan as a defined contribution plan or a defined benefit plan. However, Martina testified that at the time of the divorce, Bruce's retirement benefits had yet to mature and she would have to wait until Bruce's retirement before she would receive any payments. Martina also testified that to her understanding, Bruce's retirement plan was a defined benefit plan because Bruce would be receiving monthly annuity payments until his death. Bruce testified he began receiving his monthly annuity payment in July 2010 and would continue to do so until his death. Reviewing the evidence in the light most favorable to the trial court's findings, we conclude the evidence was legally sufficient to support the trial court's judgment awarding Martina a $1,631.28 monthly annuity payment and $37,963.52 in past due payments.

## CONCLUSION

We conclude the trial court did not abuse its discretion by reopening the evidence, and the evidence was legally sufficient. Therefore, we affirm the trial court's judgment.

Sandee Bryan Marion, Justice