# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00108-CV

**William Jackson Caro and Kathryn F. Caro/Alamo Title Insurance
of Texas, Appellants**

**v.**

**Reid Sharp; Brook Hurta; Bastrop Abstract Company, Inc.; Alamo Title Insurance
of Texas; and Dale L. Olson/William Jackson Caro and
Kathryn F. Caro, Appellees**

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT
NO. 23,137, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This appeal arises from a real estate transaction in Bastrop County. The trial court rendered a final judgment that was in part a judgment notwithstanding the verdict (JNOV) resulting in a take-nothing judgment in favor of all appellees except Alamo Title Insurance of Texas (Alamo). The final judgment was in part rendered on the jury=s verdict, resulting in a $10,750 damage award against Alamo in favor of William Jackson Caro and Kathryn F. Caro (hereafter, Aappellants@), who appeal from the take-nothing judgment against the other appellees. As cross-appellees, they seek to uphold the damages awarded to them. Alamo has filed a cross-appeal seeking to reverse that part of the judgment awarding damages against it. We will affirm those portions of the judgment finding that appellants take nothing against the other appellees; we will reverse and render judgment that appellants take nothing against Alamo as well.

**Factual and Procedural Background**

In 1995, the Caros purchased approximately thirty-four acres of land in Bastrop County from Reid Sharp and Brook Hurta.[1] The transaction closed at Bastrop Abstract Company; Alamo provided title insurance for the transaction. After the closing, an adverse claim was asserted against approximately one acre of the land. Appellants filed a claim on their title insurance policy asking that title to the one acre be cleared. Alamo began the process of curing the adverse claim. To defeat the adverse claim, an heirship proceeding was necessary. After clearing title to the acre into the Caros, Alamo sought a release from appellants. Appellants did not sign a release but instead filed suit in November 1999.

Appellants brought various claims against different appellees, asserting fraud, deceptive trade practices, failure to disclose defects in title, fraudulent misrepresentations of title, breach of contract, breach of a duty of good faith and fair dealing, and bad faith insurance practices. Various causes were dismissed on summary judgment; other causes were tried to a jury.[2] Ultimately, the court rendered a

---

[1] Hurta and Sharp worked for the First National Bank of Bastrop. They bought the property from Tommy Lee Potts, who was a friend of Hurta=s father-in-law. They bought the property, Acleaned it up a little bit@ by clearing brush, and then put the property up for sale.

[2] Particular claims against each appellee and their disposition will be discussed only as relevant to a specific issue. For example, only one issue is relevant to appellee Olson, who performed a survey in connection with the land sale.

judgment notwithstanding the verdict that appellants take nothing against all appellees except Alamo. The court then rendered judgment on the jury verdict assessing $60,750 in damages against Alamo, offset by a $50,000 benefit of appreciation, resulting in the $10,750 award to appellants from Alamo.

## Discussion

Appellants present forty-five issues in five clusters of issues, including Acumulative error.@ Many of appellants=issues are stated in the list of issues, but not mentioned again; issues are not supported by argument, record references, or citation to legal authority. *See* Tex. R. App. P. 38.1(h); *Ebner v. First State Bank*, 27 S.W.3d 287, 303 n.28 (Tex. App.CAustin 2000, pet. denied) (assignment of contention as Aissue presented@without argument or authority waived issue); *Sisters of Charity of the Incarnate Word v. Gobert*, 992 S.W.2d 25, 31 (Tex. App.CHouston [1st Dist.] 1997, no pet.) (party on appeal bears burden of showing record supports contention raised, and of specifying place in record at which matters relied on or complained of are shown); *Leyva v. Leyva*, 960 S.W.2d 732, 734 (Tex. App.CEl Paso 1997, no writ) (failure to cite authority in support of point of error waives complaint).

### *Issues Attacking the Judgment*

We begin with issue forty-four[3] in which appellants contend that the judgment is not final because it fails to award prejudgment interest to which they are entitled. Because this judgment failed to dispose of all of their claims, they conclude that the judgment lacks finality.

---

[3] In issues thirty-three through forty-four, appellants raise various attacks on the judgment. However, the only issue not waived is the forty-fourth issue challenging the judgment=s finality.

3

A judgment rendered after a conventional trial on the merits is presumed to dispose of all issues and parties. *John v. Marshall Health Servs., Inc.*, 58 S.W.3d 738, 740 (Tex. 2001); *North E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897-98 (Tex. 1966). Further, the judgment denied all relief not granted and stated that it was Aa final judgment disposing of all parties and claims.@ *See & cf. Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205-06 (Tex. 2001) (AMother Hubbard@ clause no longer automatically renders summary judgment final, but language clearly intended to indicate finality might). The judgment in this case is final. That a judgment may or may not have erroneously disposed of a claim does not affect its finality. Accordingly, we overrule issue forty-four.

### Continuance and Special Exceptions

Issues four through seven attack the trial court=s failure to grant appellants= special exceptions. These points are not briefed and are waived. Issues one through three assert that the trial court erred in failing to grant a continuance due to the unavailability of a material expert witness and because defendants= pleadings were legally insufficient to give appellants fair notice of the factual basis in support of the defenses and appellants had filed special exceptions to these pleadings; and the trial court erred in failing to give proper consideration to the underlying objective of the rules of civil procedure in denying the continuance.

An appellate court does not disturb a trial court=s order denying a motion for continuance unless the trial court has committed a clear abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 916, 917 (Tex. 1985); *State v. Crank*, 661 S.W.2d 91, 94 (Tex. 1984). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.

*Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1988). Before the reviewing court will reverse the trial court=s ruling on a motion for continuance, it should appear from the record that the trial court has disregarded the party=s rights. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex. 1986); *Royal Mortgage v. Montague*, 41 S.W.3d 721, 738 (Tex. App.CFort Worth 2001, no pet.).

Appellants filed suit November 1, 1999. They considered and rejected thirty candidates before hiring Robert Bradshaw as an expert on the title industry and on bad faith insurance practices. Appellants first hired Bradshaw in March 2001, sixteen months after filing suit, but did not meet with him again until July 12, 2001, 46 days before trial. At that time, Bradshaw informed appellants that he was resigning as their expert due to a perceived conflict of interest. His affidavit regarding his withdrawal was served on the parties July 24, 2001. On July 25, 2001, Stewart Title[4] signed a waiver of any possible conflict that Bradshaw might think he had. All defendants agreed that if Bradshaw refused to testify, appellants could designate a substitute expert after the deadline previously set by the court. Appellants opted not to seek another expert but to urge the motion for continuance. Bradshaw=s affidavit stated generally that there was a conflict that would create Aan appearance of impropriety@ and that he could not determine what effect, if any, the conflict might have on his testimony. He stated that he was Anot interested@ in putting himself in a position where there was such an Aevident conflict@ and that he would not testify as an expert regardless of any party=s waiver.

---

[4] Stewart Title is not a party to the case; Stewart owns part of Bradshaw=s title-company employer.

The court was given no concrete information about the claimed conflict, no explanation why Bradshaw would not testify after the waiver of any perceived conflict, or why the other parties= accommodation of a late designation was not adequate relief. Nor is it clear from the record why appellants= other Abad faith@ expert was not adequate.[5] The trial court could have concluded that the continuance was being sought for delay or that it simply did not have adequate evidence in front of it to justify granting a continuance because the affidavit was conclusory. *See* Tex. R. Civ. P. 251 (continuance may be granted upon sufficient cause shown). Accordingly, based on this record, we hold the trial court did not abuse its discretion in denying the continuance and overrule issue one.

In issue two, appellants contend that the trial court erred in denying a continuance because defendants= pleadings were legally insufficient to give plaintiffs= fair notice of the factual bases of the legal defenses. Appellants specially excepted to these pleadings; the special exceptions were overruled; any appeal points concerning those exceptions have been waived. Given that the overruling of the special exceptions stands, appellants cannot demonstrate harm from a denial of a continuance based on the pleadings. Accordingly, we overrule issue two.

In their third issue, appellants contend that the trial court did not give proper consideration to the underlying objective of the rules of civil procedure when it overruled appellants= motion for continuance:

---

[5] Much of appellants= complaint in their brief that the other expert could not substitute for Bradshaw seems to be based on his Anot holding up well@ under cross-examination, a factor not before the court at a pretrial proceeding.

> The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law. To the end that this objective may be attained with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable, these rules shall be give a liberal construction.

Tex. R. Civ. P. 1; *see also Bolduc v. Nat=l Union Fire Ins. Co.*, 839 S.W.2d 152, 154 (Tex. App.CHouston [1st Dist.] 1992, no writ). The primary purpose of the Rules of Civil Procedure is to dispose of cases on the merits. *Bluebonnet Farms, Inc. v. Gibralter Sav. Ass=n*, 618 S.W.2d 81, 84 (Tex. App.CHouston [1st Dist.] 1980, writ ref=d n.r.e.); *Olivares v. Service Trust Co.*, 385 S.W.2d 687, 687-88 (Tex. App.CEastland 1964, no writ).

The court carefully considered arguments on the issue whether the trial should be continued. That the case had been in progress for two years and several of the litigants were ready for trial were factors to consider, as well as appellants= desire for more time. The trial court did not ignore the underlying objective of the rule. We overrule issue three.

### Summary Judgment

Issues eight through fifteen attack the grant in part of Alamo=s and Olson=s motions for summary judgment. Issues eleven though fifteen are not argued in the brief and are waived.

In issue eight, appellants contend that they failed to receive twenty-one days= notice of the hearing on the motions. In issue ten, appellants contend that the motions were filed after the docket-control deadline for pleadings.

A motion for summary judgment and supporting affidavits must be filed and served at least twenty-one days before the time specified for hearing except with leave of court. *See* Tex. R. Civ. P.

**7**

166a(c). The decision to grant leave to file a supplement to a motion for summary judgment lies within the sound discretion of the trial court. *See Mowbray v. Avery*, 76 S.W.3d 663, 688 (Tex. App.CCorpus Christi 2002, pet. denied).

In this case, the record reflects that appellants received twenty-one days= notice of the motions for summary judgment filed by Olson and Alamo. On the day set for the hearing of various motions, including Olson=s motion for summary judgment, appellants asked for leave to file an amended petition which added causes of action. Olson and Alamo then asked to be allowed to supplement their motions to address these new causes, leaving in place the date set for the hearing on Alamo=s motion for summary judgment some two weeks later. The court allowed the amendment and also allowed the supplemental motions to be filed, with appellant=s response due the day before the hearing. The amended motions for summary judgment were filed with leave of court; appellants have not demonstrated an abuse of discretion in the court=s granting of leave to file supplemental motions for summary judgment in response to appellants= amended petition that added a new cause of action. *See Smith v. Atlantic Richfield Co.*, 927 S.W.2d 85, 88 (Tex. App.CHouston [1st Dist.] 1996, writ denied) (in order to allow court to render final judgment at hearing on motion for summary judgment when an amended petition adding cause of action was filed less than 21 days before hearing, supplemental motion for summary judgment had to be filed less than 21 days before hearing). We overrule issue eight.

Similarly, in issue ten, appellants claim that the supplemental motions for summary judgment were filed after the deadline for filing pleadings and therefore they received inadequate notice. Again, the supplemental motions were filed with leave of court granted at the same hearing in which appellants were

**8**

granted leave to file an amended petition. Appellants have not demonstrated an abuse of discretion in the court=s decision to grant leave. *See Mowbray*, 76 S.W.3d at 688. We overrule issue ten.

In issue nine, appellants contend that they should not have had to respond to Alamo=s motion for summary judgment because of the problems with their expert. At least one issue on which the Abad faith@ expert was relevant, i.e., the duty of good faith and fair dealing, was not decided on summary judgment, but was submitted to the jury. Appellants failed to file any response to Alamo=s motion for summary judgment. On appeal, appellants would have been limited to attacking the legal sufficiency of the evidence to support the motion for summary judgment. *Medlock v. Commission for Lawyer Discipline*, 24 S.W.3d 865, 870 (Tex. App.CTexarkana 2000, no pet.). However, appellants waived their points on appeal attacking the substance of the partial summary judgment in favor of Alamo. Accordingly, the summary judgment in favor of Alamo would be upheld even if an error had occurred in denying the continuance. For these reasons, and for those discussed under issue three, we overrule issue nine.

*Evidentiary Issues*

Issues sixteen through twenty attack the trial court=s exclusion of evidence and exclusion of certain testimony. Issues eighteen through twenty have not been briefed and are waived.

In issue sixteen, appellants contend that certain testimony of Mildred [Davis] Maxwell, one of the adverse claimants to the one acre, should have been admitted to attack the credibility of appellees Sharp and Hurta. Sharp and Hurta purchased the tract in question from Tommy Lee Potts, who was acting under a power of attorney on behalf of his parents. Sharp and Hurta testified that Tommy Lee told them

**9**

that there was some land Aunder fence@ that he did not own.[6] He thought it was about an acre, but did not know its exact location so Sharp and Hurta needed to have a survey done. The survey showed 1.447 acres inside a fence that Potts did not own and 0.840 acres outside the fence that Potts did own. None of this land is the one acre claimed by the Davis family.

Appellants proposed to have Maxwell testify about the land=s ownership. As a child and teenager, she had lived in a house on that land in the 1950s. That house eventually burned in the early 1970s. She knew members of the Potts family. The purpose of her testimony was to show that the Potts knew her family lived on this particular acre of land and so must have known her family owned that land. Therefore, Tommy Lee Potts must have known which acre he did not own and must have told Sharp and Hurta. Accordingly, their testimony regarding their lack of knowledge of the location of the one acre of land must have been false.

The decision to admit or exclude testimony lies within the sound discretion of the trial court. In general, an inference may not be based on another inference, that is, inferences may not be Astacked.@ *See Kelly v. LIN Television of Tex., L.P.*, 27 S.W.3d 564, 568 n.3 (Tex. App.CEastland 2000, pet. denied); *Halliburton Co. v. Sanchez*, 996 S.W.2d 216, 219 (Tex. App.CSan Antonio 1999, pet. denied). For Maxwell=s testimony to contradict Reid and Hurta, several inferences would have had to be stacked. Maxwell would have testified based on her childhood memories of growing up in a house on the acre in

---

[6] Apparently, there were numerous fences on this and adjacent property, not all of which coincided with actual property lines.

question.  This testimony does not establish that the Davis family owned that property.  Then she would have testified about knowing the Potts family.  That the Potts family might have known that a house was there does not establish legal title in the Davises.  Further, by the time Tommy Lee Potts was showing the land to Sharp and Hurta, the house that once was on the property had been gone for many years, so he might not have remembered exactly where the structure had been.  Ultimately, the jury would have had to impermissibly stack inferences or simply speculate to arrive at the conclusion that Tommy Lee Potts actually knew the exact location of the disputed acre and who its legal owner was and had communicated this information to Sharp and Hurta, who then concealed it from appellants, contrary to their testimony at trial. *See Briones v. Levine=s Dep=t Store, Inc.*, 446 S.W.2d 7, 10 (Tex. 1969) (although finding may be based on reasonable inference, it may not be based on surmise or speculation).  The excluded testimony could not have been used to accomplish appellant=s intended purpose.  We hold that the trial court did not abuse its discretion in excluding it and overrule issue sixteen.

In issue seventeen, appellants contend that the trial court erred in failing to reopen the case to admit additional evidence offered by Mr. Caro.  In testimony concerning the delay in constructing his house, Caro contradicted his own deposition testimony and finally agreed that the testimony in the deposition was correct.  Appellants wanted to reopen to Aexplain@ this testimony and to offer additional evidence concerning increased construction costs.  Before it overruled the request, the trial court considered the request, multiple objections, the fact that the jury had been listening to testimony for eight days, the fact that the proposed reopening would cover ground that had been covered at least once, and the fact that the

case was otherwise complete and it would be several hours before a recalled witness on costs could appear.

The decision to reopen a case is within the sound discretion of the trial court. *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 580 (Tex. App.CAustin 2000, no pet.); *Turner v. Lone Star Indus., Inc.*, 733 S.W.2d 242, 245 (Tex. App.CHouston [1st Dist.] 1987, writ ref=d n.r.e.). The trial court should permit a party to reopen when it clearly appears necessary to the administration of justice. Tex. R. Civ. P. 270. The party seeking to reopen must show: (1) diligence in obtaining evidence, *In re A.F.*, 895 S.W.2d 481, 484 (Tex. App.CAustin 1995, no writ); *Word of Faith World Outreach Ctr. Ch., Inc. v. Oechsner*, 669 S.W.2d 364, 367 (Tex. App.CDallas 1984, no writ); (2) the additional evidence is decisive, *A.F.*, 895 S.W.2d at 484; *Word of Faith*, 669 S.W.2d at 367; (3) the reception of additional evidence will not cause undue delay or any injustice. *A.F.*, 895 S.W.2d 484; *Word of Faith*, 669 S.W.2d at 367.

Appellants have not demonstrated how contradicting already contradicted testimony would be decisive. In overruling the request, the court noted the length of the trial. In general, appellants have not shown that reopening was necessary to the administration of justice, or that it would not cause undue delay. Finding no abuse of discretion in the trial court=s ruling, we overrule issue sixteen.

### *Jury Charge*

Issues twenty-one through thirty-two raise various attacks on the jury charge. Issues twenty-one through twenty-five and twenty-seven through thirty-two are waived for lack of briefing. The

**12**

only issue briefed is issue twenty-six in which appellants contend that the trial court erred in not submitting their proposed charge on statutory fraud on the part of Sharp and Hurta.

A party should submit its proposed charge in clusters of related requests. A single request with a large number of questions, instructions, and definitions is vulnerable to being denied in its entirety. *See Tempo Tamers, Inc. v. Crow-Houston Four, Ltd.*, 715 S.W.2d 658, 666 (Tex. App.CDallas 1986, writ ref=d n.r.e.) (20 questions in one request); *Hoover v. Barker*, 507 S.W.2d 299, 305 (Tex. App.CAustin 1974, writ ref=d n.r.e.) (54 questions in single request). The trial court is Anot required to search through the requested issues and submit those which are proper and refuse those which are improper.@ *Edwards v. Gifford*, 155 S.W.2d 786, 788 (Tex. 1941).

When the court refuses or modifies a request, it should endorse the request as Arefused@ or Amodified@ and sign it. Tex. R. Civ. P. 272, 276. If the court does not indicate its ruling on the request, no error is preserved. *Munoz v. Berne Group, Inc.*, 919 S.W.2d 470, 472 (Tex. App.CSan Antonio 1996, no writ; *Anderson v. Vinson Expl., Inc.*, 832 S.W.2d 657, 668 (Tex. App.CEl Paso 1992, no writ). If, however, the record clearly shows the request was refused, even if the trial court did not sign the refused instruction, error is preserved. *See Dallas Mkt. Ctr. Dev. Co. v. Liedecker*, 958 S.W.2d 382, 386 (Tex. 1997) (trial court=s endorsement not only method of preserving error); *Chemical Express Carriers, Inc. v. Pina*, 819 S.W.2d 585, 589 (Tex. App.CEl Paso 1991, writ denied).

In this case, the record shows appellants submitted to the trial court a AProposed Jury Charge@consisting of thirty pages of questions, instructions, and definitions.[7] The requests are not clustered by related issues. There is no endorsement to be found on the charge. In the charge conference, appellants first stated that they had no objection to almost everything that was in the court=s proposed charge. Appellants then requested submission of a definition for fraud, statutory fraud, fraud based on concealment; they then requested that question two (deceptive act or practice) with multiple definitions be submitted. Next they asked that fraud be submitted; then insurance code article 21.21 claims; then negligence; then back to statutory fraud; then breach of fiduciary duty. Finally, they objected to an instruction that was to be submitted. The court simply denied the entire request. In their written proposed charge, appellants listed one question asking whether Aany of the following@committed fraud, then listed all defendants. They then had a question asking whether Sharp or Hurta committed statutory fraud, but crossed out the word Astatutory.@ The proposed summary then asked for the following instruction: AStatutory fraud occurs whenC@but again they crossed out the word Astatutory@and capitalized Afraud.@ Each proposed question used a different definition.

Among other problems, it is not clear that appellants submitted a requested issue on Astatutory fraud@since the written submission strikes through the word Astatutory.@ Without that word, the instruction under that issue is incorrect. The charge conference was not enlightening. Ultimately, the court was not required to pick through appellants=issues and attempt to ascertain what appellant really meant with

---

[7] Appellants do not refer us to the pages of the record containing their proposed charge. We assume the one found in the clerk=s record signed by appellants as their ACharge of the Court@is the correct one.

regard to the fraud issue as opposed to what appellants said.  As the trial court was presented with an undifferentiated mass of issues and instructions, it was not error simply to overrule the entire request.  *See Tempo Tamers*, 715 S.W.2d at 658.  We overrule issue twenty-six.

### *Cumulative Error*

In issue forty-five, appellants contend that the cumulative effect of the trial court=s errors denied them a fair trial.  Appellants argue that even if each erroneous trial court ruling against them were harmless when analyzed separately, their combined effect was harmful.  *See Strange v. Treasure City*, 608 S.W.2d 604, 609 (Tex. 1980).  The cumulative error doctrine has found little favor with appellate courts.  *Crescendo Invs., Inc. v. Brice*, 61 S.W.3d 465, 481, 481 n.16 (Tex. App.CSan Antonio 2001, pet. denied).  We have held when there are no errors we reject cumulative error issues.  *See Owens v. State*, 96 S.W.3d 668, 673 (Tex. App.CAustin 2003, no pet.) (citing *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1988) (although conceivable that a number of errors may be found harmful in their cumulative effect, non-errors may not in their cumulative effect cause error)).  As noted by one commentator, the cumulative error doctrine is essentially Aswallowed@ by reversible error analysis, which involves an examination of the whole record, including other errors.  W. Wendall Hall, *Standards of Review in Texas*, 34 St. Mary=s L. J. 1, 25 (2002).  We have found no errors, hence there can be no reversal based on the cumulative effect of all errors.  We overrule issue forty-five.

### Cross-Appeal

Appellee Alamo brings three issues in its cross-appeal: (1) whether the jury instruction on breach of duty of good faith and fair dealing should not have been presented to the jury; (2) whether the

**15**

evidence is sufficient to support the judgment for breach of the duty of good faith and fair dealing; and (3)

whether an award of damages was proper for loss of use, increased construction costs, expense in

removing construction, loss of time from work, expert fees and mental anguish.

Alamo objected to the submission of the charge on the specific basis of a lack of evidence.

It did not, however, ever raise the issue with the trial court that the decision on the breach of contract issue

foreclosed submission of the charge on breach of duty of good faith and fair dealing. Accordingly, issue one

is waived on appeal. *See* Tex. R. App. P. 33.1(b). In its second issue, Alamo contends that the evidence

was insufficient to support a judgment against it for a breach of the duty of good faith and fair dealing.

The statutory and common-law standards for breach of the duty of good faith and fair

dealing are identical. *Mid-Century Ins. Co. v. Boyte*, 80 S.W.3d 546, 549 (Tex. 2002); *Universe Life*

*Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). An insurer breaches its duty of good faith and fair

dealing by denying or delaying payment of a claim when Athe insurer=s liability has become reasonably

clear.@ *Giles*, 950 S.W.2d at 55. Evidence of a bona fide dispute does not establish a breach of the duty

of good faith and fair dealing. *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 194 (Tex. 1998);

*State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997).

The issue of the breach of the duty of good faith and fair dealing Afocuses not on whether

the claim was valid, but on the reasonableness of the insurer=s conduct@ in handling the claim. *Lyons v.*

*Millers Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993). Reasonableness is determined using an

objective standard of whether a reasonable insurer under similar circumstances would have delayed or

denied payment of the claim. *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988).

**16**

Whether an insurer breached its duty of good faith and fair dealing is a fact issue. *Giles*, 950 S.W.2d at 56. Moreover, the question of whether an insurer=s conduct is reasonable in the face of acknowledged liability is one peculiarly tailored to the province of the jury. *See id.* In determining whether the evidence is legally sufficient to support a judgment for breach of the duty of good faith and fair dealing, we resolve all conflicts in the evidence and draw all inferences in favor of the jury=s findings. *Id.* at 51.

Alamo accepted the claim and began work promptly. Ultimately, the claim was paid and appellants have received clear title to all of the property. The crux of the matter is whether the amount of time between the initiation of the investigation and the final receipt of title constituted an undue delay.[8] Michael Quinn, appellants= bad faith expert, testified that the amount of time consumed was unreasonable, that the title company itself could have filed the heirship proceeding, and that a determination about outstanding liens could have begun earlier than it did. Bobby Taylor, the attorney for Maxwell/Davis family, testified that Maxwell knew who the potential heirs were and how to contact them in November or December of 1997. The necessary steps in both the heirship proceeding and the identification of liens could have begun earlier. We find this evidence legally sufficient to support the jury=s finding.

*Damages*

---

[8] Appellants also argue that Alamo was unreasonable in denying payment for consequential damages that it owed under the policy. Even appellants= own expert declared the policy ambiguous. A policy coverage dispute is not an unreasonable delay. *Castaneda*, 988 S.W.2d at 189.

In its third cross-point, Alamo attacks the various elements of the damages awarded, contending that there is no evidence to support the jury award of damages for mental anguish. In conducting a legal-sufficiency review, we review the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Lewis Construction, Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2000); *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001). If more than a scintilla of evidence exists, it is legally sufficient. *Harrison*, 70 S.W.3d at 782. More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact=s existence. *Id*.

To recover mental anguish damages, plaintiffs must introduce direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in their daily routine. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997); *Wellisch v. United Servs. Auto. Ass=n*, 75 S.W.3d 53, 59 (Tex. App.CSan Antonio 2002, pet. denied). To recover for mental anguish, a plaintiff must prove such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, or public humiliation. *See Willisch* 75 S.W.3d at 54; *King v. Graham*, 47 S.W.3d 595, 609 (Tex. App.CSan Antonio 2001, no pet.). Mental anguish is something more than mere worry, anxiety, vexation, anger, disappointment, resentment, or embarrassment. *Texas Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 394 (Tex. App.CDallas 2000, pet. denied).

Appellant William Caro testified that he was afraid of various complications, such as problems with the loan to build the house. However, no such complications materialized; i.e., he never had to deal with the fear of foreclosure. Caro said at one point he was a little more Asnappy@ with his wife but he never consulted a physician, therapist, minister or other counselor, nor did he take medication. He was

**18**

able to function at work.  Appellant Kathryn Caro testified that she was stressed and anxious.  She did not consult a doctor, either.

Appellants= testimony fits squarely within the category of Amere worry@ which will not support the recovery of mental anguish damages.  Viewed in the most favorable light to the finding, it establishes only that appellants were anxious and upset, but does not rise above the level of Amere worry.@ There is no evidence to support the award of damages for mental anguish.  Accordingly, we reverse the jury=s award of $30,000 for mental anguish.[9]

### Conclusion

Our conclusion that the mental anguish damages may not stand reduces the total amount of the jury award to $30,750.  The trial court found that a $50,000 benefit had already accrued to the Caros. Accordingly, the Caros are entitled to no additional damages.  We therefore reverse that part of the judgment awarding the Caros $10,750.00 and render judgment that the Caros take nothing against Alamo. We affirm the remainder of the judgment.

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Yeakel

---

[9]  Because we find the evidence legally insufficient, we need not address Alamo=s factual sufficiency concerns.

Affirmed in Part; Reversed and Rendered in Part

Filed:   May 8, 2003