NO. 07-03-0164-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JUNE 23, 2003

_____

IN RE: C.C.S.

_____

FROM THE COUNTY COURT OF LUBBOCK COUNTY;

NO. 2003-786,556; HON. PAULA LANEHART, PRESIDING

_____

***Opinion***

_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

Appellant C.C.S. appeals from an order involuntarily committing her for 90 days to the Sunrise Canyon Hospital in Lubbock and from an order permitting the involuntary administration of psychoactive medication. In presenting her appeal, she contends that 1) the evidence was legally insufficient to satisfy the statutory requirements for commitment, and 2) because there was no valid order for commitment, the trial court erred in ordering the administration of psychoactive medication. We affirm the orders.

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

## Background

An application for emergency detention and temporary mental health services was filed by C.C.S.'s mother on the basis that she evidenced mental illness and a substantial risk of serious harm to herself or others. The petitioner so alleged because C.C.S. had stated that she, her husband, and her four children were going to the kingdom of God or of Heaven at the end of the month and she had sold all of her family's possessions and held her children out of school for the past year. An application was also filed for an order to administer to her psychoactive medication. On March 19, 2003, a hearing was held before the trial court on both applications, after which the court executed the requested orders.

## Issue One - Sufficiency of the Evidence

In her first issue, C.C.S. argues that there is legally insufficient evidence (or no evidence) to sustain the order of involuntary confinement. We overrule the issue.

### Standard of Review

The standard by which we review a legal sufficiency claim is well known, and rather than restate it, we cite the parties to *Continental Coffee Products Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex. 1996), *In re K.C.M.,* 4 S.W.3d 392, 395 (Tex. App.--Houston [1st Dist.] 1999, pet. denied), *overruled in part on other grounds, In re C.H.,* 89 S.W.3d 17 (Tex. 2002), and *In re K.D.C.*, 78 S.W.3d 543, 546 (Tex. App.--Amarillo 2002, no pet.) for its explanation.

Next, a trial court may order the commitment of a person to a temporary inpatient mental health service if it or a jury finds from clear and convincing evidence that:

2

1) the proposed patient is mentally ill; and

2) as a result of that mental illness the proposed patient:

   (A) is likely to cause serious harm to himself;

   (B) is likely to cause serious harm to others; or

   (C) is:

      (i) suffering severe and abnormal mental, emotional, or physical distress;

      (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

      (iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. §574.034(a) (Vernon 2003). From this, we see that the trial court may order one to be involuntarily committed for 90 days if the person suffers a mental illness and either the terms of §574.034(a)(2)(A) or (B) or (C) are satisfied. Not all must be satisfied.

Next, to be clear and convincing, the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm 1) the likelihood of serious harm to the proposed patient or others or 2) the proposed patient's distress and deterioration of the ability to function. *Id.* §574.034(d). So too must it be enough to permit a factfinder to reasonably form a firm belief or conviction about the truth of the State's allegations. *See In re C.H.*, 89 S.W.3d at 25.

At bar, the trial court found that C.C.S. is mentally ill and, as a result, is likely to cause serious harm to herself or others. So too did it conclude that she is suffering distress, is experiencing substantial mental or physical deterioration of her ability to function independently, and is unable to make a rational and informed decision as to whether to submit to treatment. Though C.C.S. disagrees with all these findings, her attack upon that involving the existence of a mental illness constitutes nothing more than the statement (appearing within parentheses) that she "has not been proven [mentally ill] in this case." No argument, analysis, or citation to either the record or authority accompanies the passage. Consequently, any complaint she had with regard to it is waived, *see Dunlap v. Excel Corp.*, 30 S.W.3d 427, 434 (Tex. App.–Amarillo 2000, no pet.) (holding that substantive analysis and citation to authority must accompany an issue to avoid waiver), and we address only whether sufficient evidence appears of record to satisfy the requirements of §574.034(a)(2)(A) or (B) or (C).

*Evidence*

Viewing the record in a light most favorable to the decision of the trial court (as we must under *In re C.H.*), we find that the record contains the following evidence. C.C.S. believes herself to be "King Cyrus" and the daughter of God (or the female counterpart to Jesus Christ). So believing, she began disposing of earthly possessions in preparation for her family's journey to the Kingdom of God or Heaven. Furthermore, this kingdom was not of this earth but of another realm, C.C.S. informed others. Moreover, she told her mother that she (C.C.S.) and her four children were soon to go to that kingdom; at one point she uttered that it would be "at the end of [the] month." This led to her disposition

4

of the aforementioned possessions. The latter included not only her clothes and the family computer but also the clothes and winter coats of her children, family pictures, and children's sport trophies.[2] Her preparation also involved the removal of her four school aged children from school.[3] Indeed, prior to the transfer of their custody to their grandparents (via court order issued within a month of the commitment trial), the four children had been absent from school for approximately seven months.

Also appearing of record is evidence that one of the four children developed a cavity "so severe that it went into the roots" of the tooth. This condition existed for "probably eight to nine months" before the child was taken to a dentist. The individual who eventually took the child to the dentist was not C.C.S., but her brother. C.C.S. did not do so, according to her brother, since she "didn't believe in doctors." Instead, she opted to treat the cavity by "put[ting] vinegar on it."

Intentionally selling the clothes of one's child (especially winter coats in the North Panhandle region of Texas where winters often get cold), depriving them of medical care, denying them an education, and uttering that the children will soon be journeying to the Kingdom of God is some evidence upon which a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. It is some evidence on which a factfinder could reasonably form a firm belief or conviction that C.C.S.'s mental illness was likely to cause serious harm to others per §574.034(a)(2)(B) of the Texas Health and

---

[2]The family pictures and those of her children were believed by her to be forms of idolatry.

[3]The children apparently ranged in age from ten to 16 at the time of their removal from school. And, though C.C.S. mentioned that she desired to home-school them, she did not do so.

5

Safety Code. Moreover, these acts were overt and recent and tended to confirm the likelihood of serious harm to others, as required by §574.034(d). That C.C.S.'s parents were granted custody shortly before trial does not change this for several reasons. First, the extent and duration of that grant was not explained. So, nothing of record indicates that she will not have access to them. On the contrary, evidence appears of record illustrating that she and her husband were to have access to their offspring via supervised visits. Moreover, those visits are supervised, according to C.C.S., because she voiced that she (and her husband) "might try to take them and take them away and get out of this place, and get away . . . ." In short, evidence appears of record suggesting that she may still pose a threat to them even though they are in the custody of others.

### *Issue Two*

Via her second and final issue, C.C.S. contends that the trial court erred in ordering the administration of psychoactive medication because there was no evidence supporting her temporary commitment to a mental health facility. That is, she solely based the success of her second issue upon the success of her first. Because we overruled the first, the foundation underlying her second is non-existent. Thus, we overrule it as well.

Having overruled both issues raised by C.C.S., we affirm the order of the trial court.


Brian Quinn
Justice

6