**Opinion issued August 30, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

NOS. 01-12-00096-CV
01-12-00097-CV

———————————

**J.S., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Probate Court**
**Galveston County, Texas**
**Trial Court Case Nos. MH 4044, 4044A**

## MEMORANDUM OPINION

J.S. appeals the trial court's order for temporary inpatient mental health

services and order for administration of psychoactive medication. J.S. contends

that the evidence is legally and factually insufficient to support the order for temporary inpatient mental health services. We affirm.

**Background**

J.S. has been diagnosed with bipolar disorder. On December 8, 2011, the Galveston County Sheriff's Office, believing J.S. was mentally ill, apprehended him, and transported him to a hospital for emergency detention.[1] The officer wrote in the application for detention that J.S. had been diagnosed with bipolar disorder and schizophrenia, was not taking his medications correctly, and was exhibiting "bizarre" behavior, such as sleeping in parks in Houston rather than at home. It also noted J.S. had assaulted his mother. On the intake form, a physician wrote that J.S. showed a substantial risk of serious harm to himself or to others because of "violence/aggression toward mom, homicidal ideation toward [mom]." The next day, a doctor at the hospital applied for court-ordered temporary mental health services. The State moved for protective custody. The court ordered J.S. placed in protective custody and set the matter for hearing.

On January 4, 2012, the trial court held an evidentiary hearing on the application and motion. Dr. Waheedul Haque, J.S.'s attending physician, was the primary witness for the State. Dr. Haque testified that J.S. had bipolar disorder

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 573.001–.026 (West 2010 & Supp. 2011) (providing procedures for emergency detention for cases of suspected metal illness).

with psychotic features. According to Haque, J.S. admitted to hitting his mother many times in the past, but could give no rational explanation for these assaults. Haque testified that J.S. said he hit his mother to call attention to the plight of his family and that "she deserves to be hit" and "she needs to be treated like a dog." Dr. Haque and J.S.'s medical records described J.S. as agitated, angry, aggressive, and abusive. J.S. was verbally abusive towards Dr. Haque on a daily basis, threatening Dr. Haque that J.S. would see to it that he would lose his license to practice medicine. Phone calls or visits from his mother would cause J.S.'s abusive, aggressive, and angry behavior to escalate. Dr. Haque also testified that while J.S. had refused to take his medications for some time, J.S. began taking all of his medications a few days before the hearing, and had begun to show improvement.

Dr. Aaron Alaniz, the admitting physician, also testified. According to Alaniz, J.S. approached Alaniz's cubicle in the hospitaland stated that if Alaniz did not discharge J.S. within twenty-four to forty-eight hours, J.S. would be the last patient Alaniz ever saw. Alaniz perceived this to be a physical threat.

The trial court found that the evidence satisfied the statutory requirements for court-ordered inpatient mental health services and for the administration of psychoactive medicine. The court ordered J.S. committed to the Austin State

Hospital for inpatient care for a period not to exceed 90 days. The court also signed an order to administer psychoactive medications.

## Discussion

### A. Jurisdiction

The ninety-day period for which the trial court ordered J.S. to receive inpatient services has expired. The expiration of that period, however, does not render this appeal moot. *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (*K.E.W. I*); *J.M. v. State*, 178 S.W.3d 185, 189 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

### B. Standard of Review

An order for temporary mental health services must be supported by clear and convincing evidence. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (West 2010). When reviewing the legal sufficiency of the evidence in a case requiring proof by clear and convincing evidence, we determine whether the evidence is such that a factfinder could reasonably form a "firm belief or conviction as to the truth of the allegations sought to be established." *K.E.W. I*, 315 S.W.3d at 20 (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)). We examine all evidence in the light most favorable to the finding, assuming that the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We disregard all contrary

4

evidence unless a reasonable factfinder could not have done so. *K.E.W. I*, 315 S.W.3d at 20 (citing *In re J.F.C.*, 96 S.W.3d at 266).

When conducting a factual sufficiency review of clear and convincing evidence, we examine the entire record to determine whether "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction"; if it is, the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266; *K.E.W. v. State*, 333 S.W.3d 850, 855 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (on remand from the Supreme Court) (*K.E.W. II*). We must give "due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266. We must also consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.*

## C. Law Applicable to Court-Ordered Mental Health Services

Under the Health and Safety Code a trial court may order temporary inpatient mental health services for a patient only if the factfinder finds, from clear and convincing evidence, that:

(1) the proposed patient is mentally ill; and

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to himself;

5

(B) is likely to cause serious harm to others; or

(C) is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010). In this case, J.S. does not contest that he is mentally ill; he contends that the evidence is insufficient to show one of the three conditions in subsection (a)(2). The trial court found all three conditions to exist. On appeal, the State concedes the inadequacy of the evidence to support the trial court's finding under section 574.034(a)(2)(C). Thus, the only issue before this court is whether there is clear and convincing evidence that J.S. is likely to cause serious harm to himself or to others. *See id.* § 574.034(a)(2)(A), (B).

Section 574.034 provides, "To be clear and convincing evidence under Subsection (a), the evidence must include expert testimony and, unless waived,

6

evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to the proposed patient or others . . . ." TEX. HEALTH & SAFETY CODE ANN. § 574.034(d). The Texas Supreme Court has interpreted this statutory provision to require a recent act, either verbal or physical, that can be "objectively perceived." *K.E.W. I*, 315 S.W.3d at 24. The act must be "probative of a finding" that serious harm to the proposed patient or others is probable if the proposed patient does not receive treatment. *See id.* "The overt act itself need not be of such character that it alone" would support the required finding of probable serious harm. *Id.*

**D. Sufficiency of the Evidence**

**1. Order for Inpatient Mental Health Services**

Dr. Haque, J.S.'s attending physician, testified that J.S. admitted to hitting his mother. J.S. told Dr. Haque that he had hit his mother several times before and he did it because it "needed to be done" and "she deserved to be hit." J.S. explained that his mother was crazy and his hitting her would call attention to the fact that she was crazy. Dr. Haque also testified that J.S. said his mother deserved to be treated like a dog. Dr. Haque testified, "His thinking was so confused, he couldn't give any rational, logical explanation of why he was doing that [hitting his mother]. But he continued to say that he would."

Medical records from the period immediately before the hearing show that J.S. was "fixated" on his mother and her "lying." During his stay, he often became angry after speaking to his mother on the phone. One entry in the medical records characterizes this behavior as "volatile." When on the phone with his mother, he would scream and yell. When his parents came to visit, lashed out at them and would try to get staff to agree that his anger toward his mother was warranted. When the staff told him he should not show aggression towards his mother, he became abusive towards the staff.

J.S. was verbally abusive to the staff on other occasions as well. Dr. Haque testified that J.S. would yell at him and call him a fraud and threaten that he would see to it that Dr. Haque "never practice[d] medicine again." This happened virtually every day when Dr. Haque made his rounds. J.S. behaved similarly towards other doctors. On his arrival at the hospital, J.S. threatened Dr. Alaniz, stating that J.S. would be the last patient he would ever see.

Dr. Haque also testified about J.S.'s general behavior. J.S. exhibited "constant agitation, pacing, anger, anger outbursts, refusing to take medicine, not having any insight into his sickness, not having any plans." Dr. Haque described J.S. as "very agitated, very delusional, psychotic, threatening, loud" from the time he was admitted until the last couple of days before the hearing. Dr. Haque attributed J.S.'s recent improvement in behavior to the fact that J.S. had stopped

8

refusing his prescribed medications. Dr. Haque also testified that because of J.S.'s frequent refusal to take his medication, J.S.'s progress was slow and he needed a longer period of supervised treatment. Dr. Haque concluded as follows:

> Q. As a result of his mental illness, is the patient likely to cause serious harm to others?
>
> A. Yes.
>
> Q. Is there a recent, overt act or continuing pattern of behavior that tends to confirm that likelihood?
>
> A. Again, the history that I obtained from coming here that violent behavior was hitting his mother was what brought him here. And he had threatened our admitting doctor and then he has been threatening me on my rounds.

Viewing this evidence in the light most favorable to the trial court's finding, we conclude that the evidence is legally sufficient to support the trial court's order that J.S. undergo inpatient metal health services based on the finding that J.S. was likely to cause serious harm to others. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(B). The evidence that J.S assaulted his mother is evidence of an overt act that is probative of a finding that serious harm to others is probable if he is not treated. *See K.E.W. I*, 315 S.W.3d at 26; *see also In re J.L.*, No. 14-05-00360-CV, 2006 WL 56821, at *5 (Tex. App.—Houston [14th Dist.] Jan. 12, 2006, no pet.) (evidence legally sufficient to show likelihood of serious harm to others where proposed patient's overt acts included: behavior since stopping medication was becoming increasingly aggressive; shortly before emergency

9

detention patient had to be removed from store for aggression for fear she would harm herself or others; she became so aggressive in treatment that she had to be restrained to protect herself and others, and her record indicated she had been aggressive and violent during bouts of mania, including assaulting police officer); *In re C.C.S.*, 113 S.W.3d 459, 461 (Tex. App.—Amarillo 2003, no pet.) (evidence legally sufficient to show likelihood of serious harm to others where proposed patient said she had to prepare her family for journey to Heaven, sold all children's clothes and family's possessions, kept children out of school for year, and denied them medical care); *In re H.W.*, 85 S.W.3d 348, 353–54 (Tex. App.—Tyler 2002, no pet.) (evidence legally sufficient where proposed patient had started fire in his family's home, although patient claimed it was an accident, and because he had started other fires in the past); *D.K. v. State*, No. 05-01-00376-CV, 2001 WL 1151220, at *2 (Tex. App.—Dallas Oct. 1, 2001, no pet.) (evidence legally sufficient where proposed patient had been "assaultive" towards hospital staff, which doctor defined as "usually it's physical confrontation so there's some type of grasping, touching, biting, kicking").

J.S. argues that there is no evidence that he is likely to cause "serious" harm to others. Specifically, J.S. contends that the record does not indicate that he caused his mother "serious" harm insofar as it does not indicate "whether the hit was a slap, that his mother was ever hurt, or what the nature of the personal contact

was." This argument is foreclosed by the Supreme Court's opinion in *K.E.W.* The Supreme Court specifically held that "the overt act itself need not be of such character that it alone would support a finding of probable serious harm to others." *K.E.W. I*, 315 S.W.3d at 24. In *K.E.W.*, the overt acts that were sufficient to support the trial court's findings included: K.E.W.'s statements and written plans concerning his belief that he had an assignment to impregnate specific women, his verbal insistence on searching for the women, and his inquiries concerning a specific woman who worked at the mental health center. *Id.* at 26. There was no evidence that K.E.W. had assaulted, actually attempted to impregnate the women, or expressed an intention to impregnate a woman against her will. Similarly, the evidence of J.S.'s prior assault and threats is sufficient even without evidence that J.S. actually caused serious harm to his mother or another. *See id.* We conclude that the evidence is legally sufficient for a reasonable factfinder to have formed a firm belief or conviction that, as a result of his mental illness, J.S. would likely cause serious harm to others and that J.S.'s recent, objectively observable acts are probative of and tend to confirm such a finding. *See id.*; *see also J.L.*, 2006 WL 56821, at *5 (evidence of increasingly aggressive behavior sufficient; no evidence patient had actually caused serious harm); *In re C.C.S.*, 113 S.W.3d at 461 (statements concerning children journeying to Heaven coupled with sale of clothes and denial of medical care sufficient; no evidence children had already suffered

11

serious harm); *H.W.*, 85 S.W.3d at 353–54 (Tex. App.—Tyler 2002, no pet.) (evidence that patient started fire in family home sufficient; no evidence anyone had been harmed by fire); *D.K.*, 2001 WL 1151220, at *2 (evidence patient had been "assaultive"; no evidence anyone had been seriously harmed by behavior).

We also conclude that the evidence is factually sufficient to support the trial court's order for inpatient mental health services. Although J.S. testified that he was not refusing to take his medication and denied hitting his mother, this self-serving testimony is not so significant that a factfinder could not have reasonably have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. In other words, although there is some disputed evidence, this evidence is not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that J.S. was likely to cause serious harm to others. *See id.*; *K.E.W. II*, 333 S.W.3d at 855. Having concluded that the evidence is sufficient to support the trial court's finding that J.S., as a result of his mental illness, is likely to cause serious harm to others, we affirm the trial court's order requiring temporary inpatient mental health services for J.S on that basis. Because we affirm the trial court's order on this basis, we do not address the sufficiency of the evidence concerning J.S.'s likelihood of causing serious harm to himself. *See In re C.C.S.*, 113 S.W.3d at 461–62 (noting all three statutory requirements need not be satisfied and affirming

12

order for inpatient mental health services where evidence was sufficient to support finding that proposed patient was likely to cause serious harm to others).

### 2. Order to Administer Psychoactive Medication

J.S. contends that the trial court erred in ordering the administration of psychoactive medication because the court could order the administration of psychoactive medication only if J.S. was under a valid order for temporary or extended mental health services under Section 574.034. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1) (West 2010). J.S.'s success on this issue thus depends upon whether he prevails on his challenge to the order for temporary inpatient mental health services. Because we overruled J.S.'s issue concerning that order, his challenge to the order to administer psychoactive medication also fails. Accordingly, we affirm that order as well. *See K.E.W. II*, 333 S.W.3d at 858–59; *J.L.*, 2006 WL 56821, at \*6.

13

## Conclusion

We affirm the trial court's orders for providing inpatient mental health services and for the administration of psychoactive medicine.

Rebeca Huddle
Justice

Panel consists of Justices Higley, Sharp, and Huddle.

Justice Sharp, dissenting. Dissenting opinion to follow.