

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00387-CV

———————————————

RANDLE C. DANIELS, Appellant

V.

TROY L. DANIELS, Appellee

On Appeal from Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2010-PR01205-1-2-A

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

This appeal arises from a dispute between appellant Randle C. Daniels and appellee Troy L. Daniels, cosuccessor trustees of the Johnnie N. Daniels Revocable Trust. Randle appeals from a judgment following a jury trial naming Troy as sole trustee of the trust, removing Randle as cosuccessor trustee, and awarding the trust $230,000 in damages and $180,000 in attorney's fees as a result of Randle's breach of fiduciary duty.

### Background

Johnnie Daniels created the Johnnie N. Daniels Revocable Trust in 1995, at which time she was the sole trustee. Under the trust terms, her sons Randle and Troy became cosuccessor trustees upon Johnnie's death in 2010. Approximately a year later, Troy filed suit against Randle and Velton E. Brazell, who had claimed that Johnnie named him a cosuccessor trustee in Troy's place. Troy sought declarations that he is a cosuccessor trustee and Brazell is not, damages against Randle for breach of fiduciary duty, Randle's removal as a cosuccessor trustee, and attorney's fees.

In a first amended petition, Troy added a claim for rescission of certain deeds from Johnnie to Randle on grounds of fraud, undue influence, and breach of fiduciary duty. Troy filed a second amended petition on May 13, 2019, two days before the May 15 trial setting. The first amended petition had listed two properties as being in issue, Johnnie's former residence ("Plantation house") and an Erath County farm property. The second amended petition added a commercial property located in Grand Prairie, bank accounts, and various items of personal property.

The only exhibits admitted into evidence at trial were a certificate of trust and the trust agreement establishing the Johnnie N. Daniels Revocable Trust. The trust agreement provides that, if Johnnie failed to appoint a successor trustee, Randle and Troy would serve as cosuccessor trustees upon her death. The certificate of trust states that Johnnie died without appointing a successor trustee.

Troy testified that Randle had prevented him from entering the Plantation house to inventory its contents, collected rent payments on the Grand Prairie and farm properties without depositing those payments into the trust account, tried to drain the trust account, failed to pay property taxes on the farm property, allowed the Plantation house to fall into disrepair, and put trust assets into his own name.

At the close of evidence, Troy moved for a directed verdict on his request that the court declare that he is a valid cotrustee and Brazell (who did not appear at trial) is not. He also moved for a directed verdict on his suit to remove Randle as cotrustee. The court granted the motions to declare Troy's status as a cotrustee and Brazell's lack of such status but denied the motion to remove Randle as cotrustee.

The jury returned a verdict finding that Randle, but not Troy, breached fiduciary duties to the trust. It assessed damages of $230,000 and attorney's fees of $180,000. The court entered judgment on the verdict.

## Sufficiency Challenges
### (Issues One, Three, and Four)

In his first issue, Randle challenges the legal and factual sufficiency of the evidence to support the jury's finding that the trust incurred $230,000 in damages. In issue three, he challenges the evidentiary sufficiency to support awarding attorney's fees against him rather than against the trust. In issue four, he challenges the legal and factual evidentiary sufficiency to support the amount of the fee award. None of these challenges are preserved for our review.

The law governing preservation of sufficiency challenges is well-settled:

> In a jury trial, legal sufficiency issues or points must be preserved through one of the following procedural steps in the trial court: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial. With a few exceptions not applicable here, a complaint of factual insufficiency of the evidence to support a jury answer must have been raised in a motion for new trial.

*Dunnagan v. Watson*, 204 S.W.3d 30, 45 (Tex. App.—Fort Worth 2006, pet. denied) (citations omitted); *see T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992); Tex. R. Civ. P. 324(b).

Randle filed a pro se motion for judgment notwithstanding the verdict in which he urged the probate court to disregard the jury's verdict on rescission because it was immaterial. But Troy's rescission claim was not submitted to the jury and, in any event, has no bearing on Randle's sufficiency challenges on appeal.

4

The only legal-sufficiency challenge included in Randle's JNOV motion relates to the finding that he breached fiduciary duties to the trust. The motion does not challenge the sufficiency of the evidence to support either the damages or the attorney's-fee award.

Randle, through counsel, also filed a motion for new trial. The only grounds in that motion are the arguments he presents on appeal as alleged due-process violations. His motion makes no mention of damages, attorney's fees, or the sufficiency of the evidence to support any of the jury's findings.

Randle's first, third, and fourth issues are thus not preserved for our review and are overruled. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 220; *Dunnagan*, 204 S.W.3d at 45.

## Authority for the Attorney's-Fee Award
### *(Issue Two)*

In his second issue, Randle argues that the award of attorney's fees is not authorized either by statute or by the common law. This alleged error is not preserved for review.

Error preservation generally requires that a party present its complaint to the trial court by timely request, objection, or motion with sufficient specificity to make the trial court aware of the complaint. *See* Tex. R. App. P. 33.1(a); *D & M Marine, Inc. v. Turner*, 409 S.W.3d 853, 858 (Tex. App.—Fort Worth 2013, no pet.). Failure to comply with this rule waives the complaint on appeal. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g); *D & M Marine*, 409 S.W.3d at 858. "Complaints regarding alleged

5

error in awarding attorney's fees are subject to this rule." *Dinkins v. Calhoun*, No. 02-17-00081-CV, 2018 WL 2248572, at *8 (Tex. App.—Fort Worth May 17, 2018, no pet.) (quoting *Gipson–Jelks v. Gipson*, 468 S.W.3d 600, 604 (Tex. App.—Houston [14th Dist.] 2015, no pet.)).

Randle did not object to the attorney's-fee award in the trial court. Accordingly, his second issue presents nothing for us to review. *See Bushell*, 803 S.W.2d at 712; *D & M Marine*, 409 S.W.3d at 858.

## Due Process
### (Issue Five)

In his final issue, Randle asserts that he was denied due process because of confusion over his legal representation—including whether he could act pro se—and because Troy was permitted to file an amended petition on the eve of trial. Conceding that none of the problems to which he points "may be sufficient to deprive [Randle] of his due[-]process rights," he posits that "together they paint a picture of a case that may have been unmanageable." That is, Randle argues that these circumstances combined to deprive him of the opportunity "to put on proper evidence and testimony" to establish a meritorious defense. We construe this issue as asserting a violation of his due-process right to be heard. *See Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 265 (Tex. 2019) (noting that due process requires opportunity to be heard at meaningful time and in meaningful manner); *Highsmith v. Highsmith*, 587 S.W.3d 771, 778 (Tex. 2019) (same).

**Randle's Legal Representation**

Randle argues that he was deprived of a due-process right to present his defense because he was confused over whether he could represent himself at trial, whether he was represented by counsel, and, if so, in what capacity he was represented. The record does not support Randle's claims of confusion.

Randle originally appeared in this matter pro se. He was later represented, at different points in time, by two attorneys. The first was permitted to withdraw on grounds that he was unable to communicate with Randle and that Randle failed to pay his fees. The second was permitted to withdraw on the ground that the attorney–client relationship had declined to the point that she could no longer effectively represent Randle. As a result of these withdrawals, Randle represented himself between January 5, 2016 and August 19, 2016, and again between September 12, 2016 and April 12, 2019.[1]

On April 12, 2019, yet another attorney, Dorothy Dubose Scherr, filed a written notice of limited appearance stating that she was appearing on Randle's behalf solely for purposes of a summary-judgment hearing scheduled for that day. The notice states that Dubose Scherr's representation would not extend beyond that hearing date unless

---

[1]Randle's first attorney was permitted to withdraw on January 5, 2016. His second attorney appeared on August 19, 2016, and was permitted to withdraw less than a month later, on September 12, 2016.

she filed another notice of appearance. Randle confirmed his agreement with that arrangement by signing the notice as "read and agreed."

Trial was held on May 15, 2019. Before jury selection began, the trial court asked Randle whether he had trial counsel. Randle responded that Dubose Scherr had entered an appearance only for the summary-judgment hearing, not for trial. The court reviewed Dubose Scherr's earlier-filed limited notice of appearance and explicitly informed Randle that "[s]he does not represent you in this trial today." The trial court thus dispelled any doubt concerning whether Randle was represented by counsel at the start of trial. He was not. That status later changed, but not in a manner that caused any confusion.

Dubose Scherr arrived in the courtroom during the first witness's testimony. She told the court that she was there at Randle's request and that she had been hired in a consulting capacity the previous night. When the court asked whether she was making an appearance on Randle's behalf, Dubose Scherr clearly and unequivocally confirmed that she was appearing as Randle's attorney of record for trial and that she was representing him in both his individual capacity and as cotrustee.

Dubose Scherr then proceeded to cross-examine Troy's witnesses, present witnesses on Randle's behalf, make objections, participate in the jury-charge conference, and make a closing argument to the jury. Dubose Scherr's express appearance on Randle's behalf, individually and as cotrustee, and her conduct through

8

the remainder of the trial establish that no confusion existed about whether Randle was represented by counsel and in what capacity.

Nor does the record reflect any confusion about whether Randle could legally participate in the trial pro se. In a hearing held shortly before trial, the court explained to Randle that he could represent himself only in relation to claims brought by or against him individually, not claims brought by or against him as cotrustee. The court determined that the dividing line was Johnnie's death because Randle was not a cotrustee until that time. Randle affirmatively stated that he understood that he could not represent himself as a cotrustee and that the court's pre-death and post-death distinction cleared the matter up for him.

The court addressed the matter again at the beginning of trial. Before Dubose Scherr arrived and while Randle was present in the courtroom, the court told the jury array that Randle was not represented by counsel, that he was sued only in his capacity as cotrustee, and that in that capacity, he was required by law to be represented by counsel to fully participate at trial. The court further instructed the prospective jurors that they should not hold the lack of counsel against Randle and that they should still hold Troy to his burden of proof. The trial court repeated these instructions to the jury panel when it explained that Randle would not be permitted to make an opening statement because he was not represented by counsel.

In addition, the court explained the following directly to Randle:

RANDLE DANIELS: If I understand things correctly, I can't do anything; is that correct?

THE COURT: Well, as co-trustee and you're not represented, then you are not going to be able to cross-examine witnesses. And -- as Mr. Floyd has objected to you doing so. As well as -- you can object if anything goes into your individual capacity because you are here pro se, but you cannot object to anything as a co-trustee or representing the trust.

Randle questioned whether the jury would be able to make that distinction but did not indicate that he himself did not understand it.

Even if we were to assume that Randle's claim of confusion sufficiently alleges a due-process violation, that claim fails because it lacks any factual support in the record. On the contrary, the record establishes that Randle was plainly informed and clearly understood at the start of trial that he was not represented by counsel and that he was not permitted to proceed pro se because he was sued only in his capacity as cotrustee. The record similarly establishes that Randle was plainly informed and clearly understood upon Dubose Scherr's appearance that she represented him at trial in both his individual and representative capacities.

Randle's argument that he was deprived of due process because of confusion over his legal representation is overruled.

**Late Notice of Inability to Proceed Pro Se**

Despite claiming that he was confused about whether he could represent himself at trial, Randle acknowledges that the court informed him at a pretrial hearing that he could not represent himself in his capacity as cotrustee. Randle now argues that the trial

10

court deprived him of the ability to obtain counsel because it decided only five days before trial that he could not represent himself.

But the pretrial hearing was hardly the first time the need to obtain counsel was brought to Randle's attention. Troy moved in 2011—nearly eight years before trial—to strike Randle and Brazell's pro se answer on the ground that a person acting in a representative capacity must be represented by an attorney. In addition, Dubose Scherr's April 2019 notice of appearance, which Randle signed, states that a trustee "must obtain assistance of counsel."

The court told Randle at least three times during the pretrial hearing that he was required to have an attorney represent him in his capacity as cotrustee. Randle was well aware that the trial was scheduled to begin five days later, but he never asked for a continuance to allow him to hire an attorney nor did he make any other motion, objection, or request that would have afforded the trial court an opportunity to address the complaint he now raises. *See* Tex. R. App. P. 33.1 (preservation of error); *Addicks v. Sickel*, No. 2-03-218-CV, 2005 WL 737419, at *2 (Tex. App.—Fort Worth Mar. 31, 2005, no pet.) (mem. op.) (holding that failure to request continuance waived complaint).

Randle was not deprived of the opportunity to hire an attorney to represent him at trial. On the contrary, his failure to obtain trial counsel until after the trial began was a situation of his own making. This case had been pending for over eight years at the time of the pretrial hearing. Randle had engaged two attorneys who later withdrew

11

because he had failed to communicate or cooperate with them. He had agreed that his third attorney, Dubose Scherr, would represent him only at a summary-judgment hearing. Then, despite the court's repeatedly telling him on May 10, 2019 that he was required to have an attorney at trial, he did not engage Dubose Scherr again until the night before trial began. And even then, he hired her only in a consulting capacity.

Randle's contention that he was deprived of due process by a late determination that he could not represent himself at trial is not supported by the record and is overruled.

**Alleged Inadequacy of Representation**

Also in connection with his due-process complaint, Randle asserts that Dubose Scherr's representation was "compromised," an assertion based on Dubose Scherr's amended motion to withdraw filed after the court entered judgment. In that motion, Dubose Scherr claimed that she had a chronic and debilitating illness as well as severe hearing loss and that she was not competent to act as counsel in probate court because of her lack of experience in that court. We construe Randle's complaint to be one of ineffective assistance of counsel.

"[T]he constitutional right to effective assistance of counsel has been extended only to certain civil proceedings in Texas." *Howard v. Tarrant Cty.*, No. 02-10-00277-CV, 2012 WL 858590, at *2 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (citing *In re M.S.*, 115 S.W.3d 534, 544–45 (Tex. 2003) (holding there is a right to effective counsel in parental-rights-termination cases); *In re Protection of H.W.*, 85 S.W.3d 348, 355–

56 (Tex. App.—Tyler 2002, no pet.) (noting there is a right to effective counsel in involuntary-civil-commitment cases)). We are aware of no authority extending the right to counsel to a case such as this one. Indeed, Randle acknowledges in his brief that he has no such right.

Randle's assertion of a due-process violation resulting from alleged inadequacies in Dubose Scherr's representation is overruled.

**Timing of Troy's Second Amended Petition**

The foundation of Randle's final due-process-related complaint is that permitting Troy to file his second amended petition only two days before trial left Randle insufficient time to conduct discovery or prepare for trial.

An amended pleading may be filed within seven days of the trial date upon leave of court, "which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party." Tex. R. Civ. P. 63. Under Rule 63, "a trial court has no discretion to refuse an amendment unless: 1) the opposing party presents evidence of surprise or prejudice; or 2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment." *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990) (citations omitted).

Troy amended his petition in response to the trial court's instruction at the pretrial hearing to "clear up" what properties were at issue and whether Troy's claims were asserted against Randle individually or as cotrustee. Troy's second amended

13

petition did not add any new causes of action or defenses, and Randle did not object to its filing. Randle also did not present any evidence of surprise or prejudice. The supreme court has held in similar circumstances that "[n]ot only did the trial court *not* abuse its discretion in granting the amendment, it would have been an abuse of discretion if the trial court had refused the amendment." *Id.* (emphasis in original). Likewise, the trial court in this case would have abused its discretion if it had not permitted Troy to file the amended petition.

Randle bore the burden to object to the late amendment and to show prejudice or surprise. *See Greenhalgh*, 787 S.W.2d at 939 (placing burden of showing prejudice or surprise on party resisting amendment); Tex. R. App. P. 33.1 (requiring a timely request, objection, or motion to preserve error for review). His failure to sustain this burden is fatal to his due-process claim. Any prejudice to his right to prepare and present his defense at trial was the product of his own inaction, not any ruling by the trial court. Randle's final due-process complaint is overruled.

## Conclusion

The judgment of the trial court is affirmed.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: March 4, 2021

14